POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (212) 661-8665
jpafiti@pomlaw.com

*Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Michael Accardi, Linda Andrews, Brian Beach, Patricia Bush, Devin Lloyd, and Adam Ragsdale, Individually and On Behalf of All Others Similarly Situated, | Case No. 25-CV-04160 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** <u>**JURY TRIAL DEMANDED**</u> |
| v. | |
| APPLE INC. | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 3

III.    PARTIES ............................................................................................................ 4

        A.      Plaintiffs—Florida Resident ............................................................... 4

        B.      Plaintiffs—Nevada Resident................................................................ 4

        C.      Plaintiffs—New Mexico Resident ....................................................... 5

        D.      Plaintiffs—New York Resident ........................................................... 6

        E.      Plaintiffs—South Carolina Resident.................................................... 7

        F.      Plaintiffs—Wyoming Resident ............................................................ 8

        G.      Defendant ............................................................................................. 9

IV.     SUBSTANTIVE ALLEGATIONS ................................................................... 9

        A.      Apple Lagged Competitors in AI and Felt Pressure to Introduce AI-Based Siri
                Features To Promote iPhone 16 Devices .............................................. 9

        B.      Apple Promises Non-Existent Apple Intelligence and AI-Based Siri Features
                for iPhone 16 at the 2024 WWDC ...................................................... 11

        C.      Apple Continues to Promise Non-Existent Apple Intelligence and AI-Based
                Siri Features in Marketing iPhone 16 ................................................. 14

        D.      Apple Admits that It Promised Apple Intelligence Features, Including
                Advanced AI-Based Siri Features, That Had Not Been Developed and Will
                Not Be Available Until 2026 at the Earliest ....................................... 24

        E.      Apple Knew Its Misrepresentations Were False Because Apple Knew It Had
                Not Yet Developed Its Promised AI-Based Siri Features............................ 24

        F.      Plaintiffs Relied on Apple's Material Misrepresentations and Suffered
                Damages ............................................................................................... 27

V.      CLASS ACTION ALLEGATIONS ................................................................. 29

VI.     CAUSES OF ACTION ..................................................................................... 35

        COUNT ONE Violations Of California's False And Misleading Advertising Law
        ("FAL") Cal. Bus. & Prof. Code, § 17500 et seq. ............................................. 35

        COUNT TWO Violations Of California's Unfair Competition Law ("UCL") Cal. Bus.
        & Prof. Code, § 17200 et seq. ............................................................................. 37

CLASS ACTION COMPLAINT

COUNT THREE Violations Of California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code, § 1750 et seq. ........................................................ 38

COUNT FOUR  Violations Of The Alabama Deceptive Trade Practices Act Ala. Code § 8-19-1, Et Seq. ........................................................................... 39

COUNT FIVE  Violations Of The Alaska Unfair Trade Practices and Consumer Protection Act Alaska Stat. Ann. § 45.50.471, Et Seq. ........................... 40

COUNT SIX  Violations Of The Arizona Consumer Fraud Act Ariz. Rev. Stat. § 44-1521, Et Seq. ....................................................................................... 41

COUNT SEVEN  Violations Of The Arkansas Deceptive Trade Practices Act Ark. Code Ann. § 4-88-101, Et Seq. ...................................................................... 42

COUNT EIGHT  Violations Of The Colorado Consumer Protection Act Colo. Rev. Stat. § 6-1-101, Et Seq. ................................................................................. 43

COUNT NINE  Violations Of The Connecticut Unfair Trade Practices Act Conn. Gen. Stat. § 42-110A, Et Seq. ....................................................................... 44

COUNT TEN  Violations Of The Delaware Consumer Fraud Act Del. Code Ann. Tit. 6, § 2513, Et Seq. ................................................................................. 45

COUNT  ELEVEN  Violations Of The D.C. Consumer Protection Procedures Act D.C. Code § 28-3901, Et Seq. ......................................................................... 46

COUNT TWELVE  Florida Deceptive and Unfair Trade Practices Act Fla. Stat. §§ 501.201, Et Seq. .................................................................................... 47

COUNT THIRTEEN  Violations Of The Georgia Fair Business Practices Act Ga. Code Ann. § 10-1-390, Et Seq. ....................................................................... 48

COUNT FOURTEEN  Violations Of The Georgia Uniform Deceptive Trade Practices Act Ga. Code Ann § 10-1-370, Et Seq. ................................................... 49

COUNT FIFTEEN  Violations Of The Hawaii Act § 480-2(A) Haw. Rev. Stat. § 480, Et Seq. ................................................................................................... 49

COUNT SIXTEEN  Violations Of The Idaho Consumer Protection Act Idaho Code Ann. § 48-601, Et Seq. ......................................................................... 50

COUNT SEVENTEEN  Violations Of The Illinois Consumer Fraud And Deceptive Business Practices Act 815 Ill. Comp. Stat. 505/1, Et Seq., And 720 Ill. Comp. Stat. 295/1A ................................................................................. 51

COUNT EIGHTEEN  Violations Of The Indiana Deceptive Consumer Sales Act Ind. Code § 24-5-0.5-3, Et Seq. .................................................................... 52

COUNT NINETEEN  Violations Of The Iowa Private Right Of Action For Consumer Frauds Act Iowa Code § 714H.1, Et Seq. ............................................... 53

COUNT TWENTY  Violations Of The Kansas Consumer Protection Act Kan. Stat. Ann. § 50-623, Et Seq. .....................................................................................54

COUNT TWENTY-ONE  Violations Of The Kentucky Consumer Protection Act Ky. Rev. Stat. Ann. § 367.110, Et Seq. ...................................................................55

COUNT TWENTY-TWO  Violations Of The Louisiana Unfair Trade Practices And Consumer Protection Law La. Rev. Stat. Ann. § 51:1401, Et Seq. .................56

COUNT TWNETY-THREE  Violations Of The Maine Unfair Trade Practices Act Me. Rev. Stat. Ann. Tit. 5, § 205-A, Et Seq. ....................................................56

COUNT TWENTY-FOUR  Violations Of The Maryland Consumer Protection Act Md. Code, Com. Law § 13-101, Et Seq.......................................................57

COUNT TWNETY-FIVE  Violations Of The Massachusetts General Law Chapter 93(A) Mass. Gen. Laws Ch. 93A, § 1, Et Seq. ..................................................58

COUNT TWENTY-SIX  Violations Of The Michigan Consumer Protection Act Mich. Comp. Laws § 445.903, Et Seq.........................................................59

COUNT TWENTY-SEVEN  Violations Of The Minnesota Prevention Of Consumer Fraud Act Minn. Stat. § 325F.68, Et Seq. ........................................................60

COUNT TWENTY-EIGHT  Violations Of The Minnesota False Statement in Advertisement Act Minn. Stat. Ann. § 325F.67, Et Seq.................................61

COUNT TWENTY-NINE  Violations Of The Mississippi Consumer Protection Act Miss. Code Ann. § 75-24-1, Et Seq. .................................................................61

COUNT THIRTY  Violations Of The Missouri Merchandising Practices Act Mo. Rev. Stat. § 407.010, Et Seq.............................................................................62

COUNT THIRTY-ONE  Violations Of The Montana Unfair Trade Practices And Consumer Protection Act Of 1973 Mont. Code Ann. § 30-14-101, Et Seq. ....63

COUNT THIRTY-TWO  Violations Of The Nebraska Consumer Protection Act Neb. Rev. Stat. § 59-1601, Et Seq. ...........................................................................64

COUNT THIRTY-THREE  Violations Of The Nevada Deceptive Trade Practices Act Nev. Rev. Stat. § 598.0903, Et Seq.................................................................65

COUNT THIRTY-FOUR  Violations Of The New Hampshire Consumer Protection Act N.H. Rev. Stat. Ann. § 358-A:1, Et Seq...................................................66

COUNT THIRTY-FIVE  Violations Of The New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1, Et Seq. ...........................................................................67

COUNT THIRTY-SIX  Violations Of The New Mexico Unfair Trade Practices Act N.M. Stat. Ann. §§ 57-12-1, Et Seq.................................................................67

COUNT THIRTY-SEVEN  Violations Of New York General Business Law N.Y. Gen. Bus. Law §§ 349, Et Seq. ..................................................................68

COUNT THIRTY-EIGHT Violations Of New York General Business Law N.Y. Gen. Bus. Law §§ 350, et seq. .............................................................. 69

COUNT THIRTY-NINE  Violations Of The North Carolina Unfair And Deceptive Acts And Practices Act N.C. Gen. Stat. § 75-1.1, Et Seq................................70

COUNT FORTY  Violations Of The North Dakota Consumer Fraud Act N.D. Cent. Code § 51-15-02, Et Seq.....................................................................71

COUNT FORTY-ONE  Violations Of The Ohio Consumer Sales Practices Act Ohio Rev. Code Ann. § 1345.01, Et Seq. ..............................................71

COUNT FORTY-TWO  Violations Of The Oklahoma Consumer Protection Act Okla. Stat. Tit. 15, § 751, Et Seq. .................................................................72

COUNT FORTY-THREE  Violations Of The Oregon Unlawful Trade Practices Act Or. Rev. Stat. § 646.605, Et Seq. ...............................................73

COUNT FORTY-FOUR  Violations Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law 73 Pa. Cons. Stat. § 201-1, Et Seq. .......................74

COUNT FORTY-FIVE  Violations Of The Rhode Island Unfair Trade Practices And Consumer Protection Act  R.I. Gen. Laws § 6-13.1, Et Seq...........................75

COUNT FORTY-SIX  Violations Of The South Carolina Unfair Trade Practices Act S.C. Code Ann. § 39-5-10, Et Seq. ....................................................76

COUNT FORTY-SEVEN  Violations Of The South Dakota Deceptive Trade Practices And Consumer Protection Law S.D. Codified Laws § 37-24-6, Et Seq...........76

COUNT FORTY-EIGHT  Violations Of The Tennessee Consumer Protection Act Tenn. Code Ann. § 47-18-101, Et Seq. ............................................77

COUNT FORTY-NINE  Violation Of Texas Business And Commerce Code Deceptive Trade Practices-Consumer Protection Act  Tex. Bus. & Com. Code Ann. §§ 17.41, Et Seq. .................................................................78

COUNT FIFTY  Violations Of The Utah Consumer Sale Practices Act  Utah Code Ann. § 13-11-1, Et Seq. ...................................................................81

COUNT FIFTY-ONE  Violations Of The Vermont Consumer Fraud Act  Vt. Stat. Ann. Tit. 9, § 2451, Et Seq. ....................................................................82

COUNT FIFTY-TWO  Violations Of The Virginia Consumer Protection Act  Va. Code Ann. § 59.1-196, Et Seq. .................................................................82

COUNT FIFTY-THREE  Violations Of The Washington Consumer Protection Act Wash. Rev. Code Ann. §§ 19.86.010, Et Seq. ...................................................83

COUNT FIFTY-FOUR  Violations Of The West Virginia Consumer Credit And
    Protection Act  W. Va. Code § 46A-1-101, Et Seq. ...........................................84

COUNT FIFTY-FIVE Violations Of The Wisconsin Deceptive Trade Practices Act
    Wis. Stat. § 110.18, Et Seq. ...................................................................85

COUNT FIFTY-SIX Violations Of The Wyoming Consumer Protection Act  Wyo.
    Stat. § 40-12-105, Et Seq. .....................................................................86

COUNT FIFTY-SEVEN Common Law Fraud and Deceit..........................................87

COUNT FIFTY-EIGHT Common Law Negligent Misrepresentation.........................88

COUNT FIFTY-NINE Common Law Breach of Contract ..........................................88

COUNT SIXTY Common Law Breach of Implied Warranty of Merchantability.......89

COUNT SIXTY-ONE Common Law Quasi-Contract/Unjust Enrichment..................90

VII.     PRAYER FOR RELIEF ...........................................................................91

VIII.    DEMAND FOR TRIAL BY JURY ..........................................................91

CLASS ACTION COMPLAINT

Plaintiffs Michael Accardi, Linda Andrews, Brian Beach, Patricia Bush, Devin Lloyd and Adam Ragsdale ("Plaintiffs"), individually and on behalf of all other persons similarly situated, as defined below, bring this complaint against Defendant Apple Inc. ("Apple" or the "Company") and allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and information and belief as to all other matters.

## I.  INTRODUCTION

1.    Between June 10, 2024 and March 7, 2025, (the "Relevant Period"), Apple and its officers misrepresented that advanced AI-based Siri features would be available for the iPhone 16 and that these features were a primary reason for customers to buy the iPhone 16.  In fact, Apple had yet to develop these features and had no reasonable basis to promise consumers that these features would be introduced as part of the iPhone 16 product cycle.

2.    On June 10, 2024, the Company held its annual Worldwide Developer Conference ("WWDC").  At the 2024 WWDC, Apple promised a suite of groundbreaking new features it termed "Apple Intelligence," including significant AI-based enhancements to Siri, that in fact were nowhere near to having been developed.  Apple stated, for example:

> Siri will be able to deliver intelligence that's tailored to the user and their on-device information.  For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email.  Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time.

3.    Throughout the Relevant Period, Apple continued to mislead consumers to believe that advanced AI-based Siri features were available for iPhone 16 or would be made available as part of the iPhone 16 product cycle.  For example, when Apple began selling iPhone 16 on September 13, 2024, Apple stated, "With Apple Intelligence, Siri can draw on a user's personal context to answer questions."  In fact, this capability had yet to be invented and is still unavailable.  Likewise, in extensive nationwide advertising campaigns during the Class Period, including advertising on its website and television ads shown to millions of viewers

1    during NFL games and MLB playoffs, Apple promised advanced AI-based Siri features that had

2    not even been created.

3        4.    Apple's misrepresentations to consumers misled even the most sophisticated

4    institutional followers of Apple.  Apple investors widely expected iPhone sales to enjoy a

5    particularly strong year in 2024 and 2025 due primarily to Apple's promised introduction of these

6    advanced AI-based Siri features for iPhone 16.  Some investors labelled the iPhone 16 sales cycle

7    "The Great Apple Intelligence iPhone Super Cycle."  The iPhone 16 otherwise lacked major

8    changes.  Investors factored strong expected iPhone 16 sales into their valuation of Apple.

9        5.    In fact, Apple knew that it had no reasonable basis to promise consumers that it

10    would introduce advanced AI-based Siri features as part of the iPhone 16 product cycle.  At the

11    time Apple made these promises at the 2024 WWDC, Apple was nowhere near realizing these

12    features and remains far from realizing them to this day.  Bloomberg's Mark Gurman has reported

13    that Apple executives, including software engineer Craig Federighi, "voiced strong concerns

14    internally that the features didn't work properly—or as advertised—in their personal testing."

15    Apple sources also reported that employees in Apple's AI division "believe that work on the

16    features could be scrapped altogether" and that the features may have to be rebuilt "from scratch."

17    Indeed, some sources at Apple predict that the next-generation Siri promised by Apple will not

18    be ready until 2027 at the earliest, *three years* after the Apple Intelligence announcement in 2024.

19    Notably, Apple's top executive overseeing Siri, Robby Walker, reportedly admitted to staff

20    during an all-hands meeting that the Company "publicly promote[d] the technology before it was

21    ready."  Walker stated, "This was not one of these situations where we get to show people our

22    plan after it's done.  We showed people before."

23        6.    Ultimately, Apple had to confess that it the AI-based Siri features that it had

24    promised consumers and touted as reasons to purchase iPhone 16 devices had not yet been

25    developed and would not be introduced as part of the iPhone 16 product cycle.  On March 7,

26    2025, John Gruber published a statement he received from Apple spokeswoman Jacqueline Roy,

27    in which she stated in part:

28

> We've . . . been working on a more personalized Siri, giving it more awareness of your personal context, as well as the ability to take action for you within and across your apps. *It's going to take us longer than we thought to deliver on these features and we anticipate rolling them out in the coming year.*

(Emphasis added.)  Gruber criticized Apple's promised AI-based Siri features as having been "vaporware" (imaginary) and Apple's WWDC advertising as being, in retrospect, merely a "concept video."  The same day, Apple stopped running advertisements promoting the advanced AI-based Siri features and pulled those advertisements from its website and YouTube account.

7.      In promising that advanced AI-based Siri features would be available during the iPhone 16 product cycle and advertising iPhone 16 Devices on the basis of that promise, Apple violated numerous laws designed to prevent exactly this sort of consumer deception.  Consumers relied on Apple's promises in purchasing iPhone 16 Devices.  Consumers would not have purchased iPhone 16 Devices, or would not have paid as much for them, had Apple not misled them to believe that these Devices would be able to do things they could not do, and would not be able to do for years, if ever.

## II.    JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action with a proposed Class of more than 100 members in which the matter in controversy exceeds the sum of $5,000,000, and Apple is a citizen of a State different from that of at least one Class member.

9.      This Court also has personal jurisdiction over Apple because Apple is incorporated under California law and headquartered in Cupertino, California in Santa Clara County, and Apple purposefully availed itself of this forum by conducting substantial business within California such that Apple has significant, continuous, and pervasive contacts with the State.

3
CLASS ACTION COMPLAINT

10.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Apple's principal place of business is located in this District and substantial parts of the events or omissions giving rise to the claims occurred in this District.

## III.    PARTIES

### A.    Plaintiffs—Florida Resident

12.     Plaintiff Linda Andrews has been a resident of Florida at all relevant times and resides in Venice, Florida.  Andrews is the owner of an iPhone 16 Device, specifically the iPhone 16.  Andrews purchased the iPhone 16 in October 2024 from Apple in Florida after relying on Apple's pervasive marketing campaign and on Apple's promises that the iPhone 16 would have advanced AI-based Siri features during the iPhone 16 product cycle.  Andrews remembers seeing Apple Intelligence advertisements promoted in various places, including, but not limited to, emails from her phone carrier, which she received at her home in Florida.  She remembers seeing these advertisements continuously for about three or four months prior to her purchase in October 2024.  She frequently received emails advertising the iPhone 16.  These advertisements convinced her to upgrade from her previous iPhone, the iPhone XR.  Andrews was unaware that Apple's statements regarding the Siri AI capabilities were materially false and misleading.  But for Apple's materially false and misleading statements, Andrews would not have purchased the iPhone 16, or would have purchased it only for a price of at least $100 less than what she paid. Plaintiff may purchase a new iPhone in the future, and lacks any specialized knowledge that would prevent her from being deceived again by similar misrepresentations from Apple about the AI-based capabilities of its iPhones.

### B.    Plaintiffs—Nevada Resident

13.     Plaintiff Michael Accardi has been a resident of Nevada at all relevant times and resides in Pahrump, Nevada.  Accardi is the owner of an iPhone 16 Device, specifically the

iPhone 16.  Accardi purchased the iPhone 16 in or around January 2025 from Apple in Nevada, after relying on Apple's pervasive marketing campaign and on Apple's promises that the iPhone 16 would have advanced AI-based Siri features during the iPhone 16 product cycle.  Accardi remembers seeing Apple Intelligence advertisements in various places, including, but not limited to, in emails, texts, and notifications from Apple, as well as from his phone carrier.  Accardi was sent the advertisements through email at least a few times a month, and he received texts and notifications from Apple at least once a week.  His phone carrier also sent him Apple advertisements repeatedly, which heavily promoted the new features.  These advertisements eventually convinced him to trade in his iPhone 12.5 max and to upgrade to the iPhone 16, which he regrets.  Accardi specifically recalls the advertisements emphasizing that the iPhone 16 performance was supposed to have better communication with Siri and better Siri features, and he does not believe the Device lived up to those promises in any sense.  He saw these advertisements at his home in Nevada.  Accardi was unaware that Apple's statements regarding the Siri AI capabilities were materially false and misleading.  But for Apple's materially false and misleading statements, Accardi would not have purchased the iPhone 16; he was perfectly happy with the iPhone 12.5 max.  If there were a price at which Accardi would have purchased the iPhone 16 knowing it lacked additional Siri features, that price would have been at most approximately $50.  He also reports experiencing software issues with his iPhone 16, including that the battery life does not last as long as advertised.  Plaintiff may purchase a new iPhone in the future and lacks any specialized knowledge that would prevent him from being deceived again by similar misrepresentations from Apple about the AI-based capabilities of its iPhones.

C.    **Plaintiffs—New Mexico Resident**

14.    Plaintiff Patricia Bush has been a resident of New Mexico at all relevant times, and resides in Albuquerque, New Mexico.  Bush is the owner of an iPhone 16 Device, specifically the iPhone 16 Pro Max.  Bush purchased the iPhone 16 in or around September 2024 from Apple in New Mexico, after relying on Apple's pervasive marketing campaign and on Apple's promises that the iPhone 16 would have advanced AI-based Siri features during the iPhone 16 product

cycle.  Bush remembers seeing Apple Intelligence advertisements promoted in various places, including, but not limited to, on television and online, through her social media, including Facebook.  Bush saw the online advertisements "repeatedly," which is why they caught her attention.  Bush specifically recalls the advertisements pointing to the new AI features, and how important these features would be in modern life.  She saw these advertisements both at her home and at her office, in New Mexico.  Bush was unaware that Apple's statements regarding the Siri AI capabilities were materially false and misleading.  But for Apple's materially false and misleading statements, Bush would not have purchased the iPhone 16.

### D.    Plaintiffs—New York Resident

15.    Plaintiff Brian Beach has been a resident of New York at all relevant times, and resides in Amsterdam, New York.  Beach is the owner of an iPhone 16 Device, specifically the iPhone 16 Pro.  Beach purchased the iPhone 16 on or around February 4, 2025 from Apple in New York after relying on Apple's pervasive marketing campaign and on Apple's promises that the iPhone 16 would have advanced AI-based Siri features during the iPhone 16 product cycle.  Beach remembers seeing Apple Intelligence advertisements detailed in this complaint promoted in various places, including, but not limited to, multiple times on his Facebook page and through his phone carrier's account.  He specifically remembers that the advertisements he saw focused on how Siri was now based on AI and would provide new AI-based functionality.  Beach saw these Apple advertisements between December 2024 and January 2025, before purchasing his phone in February 2025.  Beach was unaware that Apple's statements regarding the Siri AI capabilities were materially false and misleading.  But for Apple's materially false and misleading statements, Beach would not have purchased the iPhone 16; he specifically chose the iPhone 16 because the AI features appealed to him, and he otherwise would have gone with a cheaper phone option.  He also reports experiencing software issues with his iPhone 16, including that auto-correct is not functioning as normal, correcting regular words and popping up at the wrong time.  Plaintiff may purchase a new iPhone in the future and lacks any specialized

1  knowledge that would prevent him from being deceived again by similar misrepresentations from

2  Apple about the AI-based capabilities of its iPhones.

3        **E.**    **Plaintiffs—South Carolina Resident**

4        16.    Plaintiff Adam Ragsdale has been a resident of South Carolina at all relevant

5  times, and resides in Easely, South Carolina.  Ragsdale is the owner of an iPhone 16 Device,

6  specifically the iPhone 16 Pro Max.  Ragsdale keeps updated with Apple Technology and

7  watches Apple's WWDC videos on a regular basis.  He watched the WWDC keynote in 2024,

8  where Apple promoted Apple Intelligence.  Ragsdale purchased the iPhone 16 from Apple in

9  South Carolina in September 2024, by pre-ordering right after viewing the 2024 WWDC, and

10  after relying on Apple's pervasive marketing campaign and on Apple's promises that the iPhone

11  16 would have advanced AI-based Siri features during the iPhone 16 product cycle.  Ragsdale

12  remembers seeing Apple Intelligence advertisements promoted "everywhere" in various places,

13  including, but not limited to, during the 2024 WWDC keynote, as the top banner on YouTube,

14  on constantly on television advertisements in his home in South Carolina.  Ragsdale remembers

15  he saw the television advertisements many times on the day of the iPhone 16 launch, around

16  September 15, 2024, and he saw the advertisement "constantly" for at least two weeks after it

17  was announced, at least a couple of dozen times.  Apple used a section of the WWDC event that

18  was shortened as a brief advertisement on YouTube, which he saw multiple times.  Ragsdale

19  remembers seeing these advertisements for Apple Intelligence from September 2024 onward

20  throughout the Class Period.  Ragsdale was unaware that Apple's statements regarding the Siri

21  AI capabilities were materially false and misleading.  But for Apple's materially false and

22  misleading statements, Ragsdale would not have purchased the iPhone 16 at the price he paid, as

23  the iPhone 16 he has is the same as his previous iPhone 15 "control center, dimension, even color

24  wise," and he would have kept his iPhone 15.  Had Ragsdale known that iPhone 16 would not

25  have the AI-based Siri features Apple had advertised, Ragsdale would only have purchased

26  iPhone 16 at a price more than $100 less than what he paid.  Ragsdale remembers watching

27

28

CLASS ACTION COMPLAINT

1  YouTube reviews on the iPhone 16 and remembers that at least one customer left a scathing

2  review because they did not get the AI updates they were promised/advertised.

3  **F.    Plaintiffs—Wyoming Resident**

4  17.    Plaintiff Devin Lloyd has been a resident of Wyoming at all relevant times, and

resides in Cheyenne, Wyoming.  Lloyd is the owner of an iPhone 16 Device, specifically the

iPhone 16 Pro.  Lloyd purchased the iPhone 16 in or around January 22, 2025 from Apple through

his phone carrier in Wyoming, after relying on Apple's pervasive marketing campaign and on

Apple's promises that the iPhone 16 would have advanced AI-based Siri features during the

iPhone 16 product cycle.  Lloyd remembers seeing Apple Intelligence advertisements in various

places, including, but not limited to, in emails, in stores, and through his phone carrier.  Lloyd

saw the advertisements and emails many times during December 2024, around the Christmas

season, and specifically for a few weeks before he got his iPhone 16 in January 2025.  Lloyd

purchased his iPhone 16 based on these advertisements, as he thought the iPhone 16 would be a

"jump in technology."  Lloyd recalls seeing advertisements focused on Apple Intelligence with

pictures of the iPhone 16 on a black background and words above it advertising its features.

Lloyd saw these advertisements both at his home on his cell phone, and in his phone carrier's

stores in Wyoming.  Lloyd was unaware that Apple's statements regarding the Siri AI capabilities

were materially false and misleading.  But for Apple's materially false and misleading

statements, Lloyd would not have purchased the iPhone 16.  He would have kept his iPhone 14

and waited for a new series of iPhone because he believes there is nothing novel about the iPhone

16.  Had Lloyd known that iPhone 16 would not have the AI-based Siri features Apple had

advertised, Lloyd would only have purchased iPhone 16 at a price more than $100 less than what

he paid.  He paid around $1199 for the Device, which he believes to be more expensive than

iPhones in the past that he has bought.  Plaintiff may purchase a new iPhone in the future, and

lacks any specialized knowledge that would prevent him from being deceived again by similar

misrepresentations from Apple about the AI-based capabilities of its iPhones.

CLASS ACTION COMPLAINT

18.     Plaintiffs Accardi, Andrews, Beach, Bush, Lloyd and Ragsdale are referred to collectively as "Plaintiffs." They all purchased iPhone 16 Devices relying on Apple's misleading statements, including its statements that advanced AI-based Siri features would be available during the iPhone 16 product cycle.

19.     Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated purchasers ("Class Members") of the Apple iPhone 16, iPhone 16e, iPhone 16 Plus, iPhone 16 Pro and iPhone 16 Pro Max (the "iPhone 16 Devices" or the "Products"). Apple misleadingly advertised that these products would be equipped with specific "Apple Intelligence" features even though they are not.

### G.     Defendant

20.     Defendant Apple Inc. is a corporation that was created under the laws of the State of California and has its principal place of business in Cupertino, California. Apple develops, sells to consumers, markets, and directs into the stream of commerce iPhone 16 Devices and has not taken appropriate action to make clear the false and misleading nature of its Apple Intelligence promotional campaign.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.     Apple Lagged Competitors in AI and Felt Pressure to Introduce AI-Based Siri Features To Promote iPhone 16 Devices

21.     Apple is a multinational technology company that engages primarily in the businesses of smart-device and computer design and manufacturing, entertainment and artificial intelligence ("AI"). The Company was founded in 1976 and is headquartered in Cupertino, California. Apple's common shares trade on the NASDAQ under the ticker symbol "AAPL." Apple frequently ranks as the most valuable company in the world by market capitalization.

22.     Apple's highest revenue product is the iPhone. Apple designs, manufactures, markets and distributes the iPhone. The iPhone accounts for hundreds of billions of dollars in revenue annually for the Company. In 2024 alone, Apple generated over $201 billion in revenue from iPhone sales. Apple's iPhones, like other products that incorporate rapidly evolving

technology, are not designed or intended for long-term use. iPhones quickly become obsolete or inoperable. Indeed, Apple only guarantees that its iPhones will work for one year, as Apple's warranty for iPhones lasts only twelve months from the date of purchase. Apple consistently introduces a new line of iPhones cyclically each year in the fall, and actively markets that line of iPhones for one year until it introduces the next line of iPhones the following fall. This cycle of introducing and marketing an iPhone line for a year may be termed an "iPhone product cycle."

23.    The current iPhone product cycle is that of the iPhone 16. Apple iPhone 16 Devices range in price from $699 to $1,199 pre-tax for entry-level configurations. Apple marketed and sold iPhone 16 Devices throughout the United States (in all fifty states) and internationally throughout the Relevant Period. Apple began to sell iPhone 16 Devices online on September 13, 2024 and began to sell the Devices in stores one week later. In the first weekend after its release, Apple sold approximately 37 million iPhone 16 smartphones in the United States. Apple sold approximately 226 million iPhones in total in 2024. Apple's sales of iPhone 16 Devices were approximately 11% higher than sales of the iPhone 15 line.

24.    Apple's iPhone operating software ("iOS") includes a rudimentary digital personal assistant called "Siri," which Apple first introduced in October 2011.

25.    At least sixty percent of consumers consider AI features, and AI-based digital personal assistants, to be important and material to their decision to purchase a smartphone.[1] Apple's competitors such as Alphabet (which owns the Google suite of products), Meta, Amazon and Microsoft recently introduced advanced AI capabilities through software that uses large language models in its programming. In January 2024, Apple's competitor in the smartphone market, Samsung, announced that it would integrate Google's AI personal assistant Gemini into its smartphone devices. With the introduction by Apple's competitors of advanced AI

---

[1] *See, e.g.*, Rishad D'Souza, *AI on smartphones–what features do consumers value most?*, YouGov (Sept. 30, 2024), https://business.yougov.com/content/50614-ai-on-smartphones-what-features-do-consumers-value-most.

CLASS ACTION COMPLAINT

capabilities, Apple felt pressure to introduce AI-based capabilities on its iPhones, and in particular to introduce advanced AI-based Siri features.[2]

26.    In the years and months prior to Apple's introduction of the iPhone 16, Apple struggled in the AI arena.  Apple faced mounting criticism for lagging behind its competitors in developing AI-based capabilities.[3]  Yet in spite of its failures to make progress in developing AI capabilities for its devices, in order to bolster sales of iPhone 16 Devices, Apple advertised AI-based features and capabilities it had not yet developed in connection with its marketing of these Devices.

**B.    Apple Promises Non-Existent Apple Intelligence and AI-Based Siri Features for iPhone 16 at the 2024 WWDC**

27.    Each year, Apple hosts its WWDC, where it unveils its newest products and features before they are released.  Apple consistently begins to sell products unveiled at its WWDC within months of the conference.

28.    On June 10, 2024, Apple held the WWDC for that year and disseminated video and audio from this WWDC to consumers in all fifty states.  The centerpiece of this WWDC was Apple's long-anticipated announcement of AI features for its devices, which Apple called "Apple Intelligence."[4]  Tim Cook, Apple's CEO, introduced Apple Intelligence.  He and the Apple team spent far more time discussing this product than any other product mentioned at the WWDC— over 39 minutes (the second longest product introduction lasted less than 17 minutes).

29.    In his presentation, Craig Federighi, Apple's SVP, Software Engineering, detailed Apple Intelligence's supposed "capabilities" at length.  He stated:

---

[2] *See id.*

[3] *Apple Intelligence has failed to boost iPhone sales*, Seeking Alpha (Jan. 11, 2025), available at https://www.msn.com/en-us/technology/artificial-intelligence/apple-intelligence-has-failed-to-boost-iphone-sales-ming-chi-kuo/ar-BB1rhczl?ocid=BingNewsVerp.

[4] Press Release, Apple, Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac (June 10, 2024), https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-and-mac/.

Apple Intelligence can process the relevant personal data to assist me. It can understand who my daughter is, the play details she sent several days ago, the time and location for my meeting, and predicted traffic between my office and the theater. Understanding this kind of personal context is essential for delivering truly helpful intelligence.

30.    Kelsey Peterson, Apple's Director of Machine Learning and AI, likewise spoke in detail about Siri's new AI capabilities. She stated:

I want to show you one more demo that will give you a sense for how powerful Siri will be when it draws on the personal context awareness and action capabilities built into Apple Intelligence. Imagine that I am planning to pick my mom up from the airport, and I'm trying to figure out my timing. Siri is going to be able to help me do this so easily. Siri, when is my mom's flight landing? What's awesome is that Siri actually cross-references flight details that my mom shared with me by email with real-time flight tracking to give me her up-to-date arrival time. What's our lunch plan? I don't always remember to add things to my calendar, and so I love that Siri can help me keep track of plans that I've made in casual conversation, like this lunch reservation my mom mentioned in a text. How long will it take us to get there from the airport? I haven't had to jump from Mail to Messages to Maps to figure out this plan. And a set of tasks that would have taken minutes on my own and honestly probably would have resulted in a call to my Mom could be addressed in a matter of seconds. That's just a glimpse of the ways in which Siri is going to become more powerful and more personal thanks to Apple Intelligence.

31.    In these presentations at the June 10, 2024 WWDC, Apple made clear that these advanced Apple Intelligence features, including the advanced AI-based Siri features, were to be introduced with iOS 18, and that all features would be introduced within one year of the presentation. For example, Tim Cook implied that AI-based Siri features that draw on personal context would be available as part of iOS 18 when he stated: "With iOS 18, iPadOS 18, and macOS Sequoia, we are embarking on a new journey to bring you intelligence that understands you. Apple Intelligence . . . draws on your personal context to give you intelligence that's most helpful and relevant for you." Cook likewise concluded the WWDC presentation by stating, "the introduction of powerful new Apple Intelligence features to iOS 18, iPadOS 18, and macOS

Sequoia make these releases game-changers."[5]  Cook also stated in closing, "Apple Intelligence will be available to try out in US English this summer.  We are bringing it to users in beta as part of iOS 18, iPadOS 18, and macOS Sequoia this fall, with some features and additional languages and platforms coming out over the course of the next year," i.e., by June 2025 at the latest.

32.    At the WWDC and in the Apple Newsroom Press Release from the same day, Apple advertised Apple Intelligence as an innovative set of tools for iPhone 16 Devices.  Apple gave the impression that these features were unique to Apple and could only be enjoyed through the purchase of Apple's newest products.  CEO Tim Cook stated: [6]

> We're thrilled to introduce a new chapter in Apple innovation.  Apple Intelligence will transform what users can do with our products—and what our products can do for our users.  Our unique approach combines generative AI with a user's personal context to deliver truly helpful intelligence. [. . .] *This is AI as only Apple can deliver it . . . .*

33.    Due to Apple's promises of groundbreaking AI-based features, media buzz surrounding the release of these features was intense and widespread.[7]  Even though this coverage amplified the misrepresentations in Apple's announcement of yet-to-be-developed features, Apple did nothing to quell or correct any of the misleading media coverage.  Instead, Apple engaged in a pervasive advertising campaign for features that it knew did not currently exist and would not exist for years to come.

---

[5] 2024 Apple Worldwide Developers Conference Keynote, Apple, https://developer.apple.com/videos/play/wwdc2024/101/ (last visited May 8, 2025).

[6] June 10, 2024 Apple Press Release, *supra* note 4.

[7] *See e.g.*, Samantha Kelly et al., *Apple Introduces AI to its products at WWDC*, CNN (June 10, 2024 6:09 PM EDT), https://www.cnn.com/business/live-news/apple-wwdc-keynote-06-10-24/index.html#:~:text=Apple%20introduced%20%E2%80%9CApple%20Intelligence%E2%80%9D%20%E2%80%93,host%20of%20Apple%20product%20updates; Brian Heater, *Apple Intelligence is the company's new generative AI offering*, TechCrunch (June 10, 2024 11:08 AM PDT), https://techcrunch.com/2024/06/10/apple-intelligence-is-the-companys-new-generative-ai-offering/; Samantha Murphy Kelly, *Everything Apple announced at its big AI event*, CNN (June 11, 2024 7:18 AM EDT), https://www.cnn.com/2024/06/10/tech/apple-ai-next-big-thing/index.html; Todd Haselton, *Siri will tap into OpenAI's ChatGPT and will be free*, CNBC (June 10, 2024 2:37 PM EDT), https://www.cnbc.com/2024/06/10/apple-wwdc-live-updates.html.

**C.      Apple Continues to Promise Non-Existent Apple Intelligence and AI-Based Siri Features in Marketing iPhone 16**

34.      After the June 10, 2024 WWDC, Apple immediately began an extensive marketing campaign in all fifty states for the iPhone 16 based on Apple Intelligence and AI-based Siri features.  This marketing campaign continued across various media well after the release of the iPhone 16 Devices.  In marketing iPhone 16, Apple continued to mislead consumers to believe that iPhone 16 Devices would be equipped with AI features that in truth had not yet been developed.  Apple disseminated these misrepresentations across many platforms including Apple's website, social media, television advertisements, and Apple's authorized retail vendors.  These misrepresentations were seen by a broad spectrum of the public, including for example when Apple ran its advertisements during national high-traffic sporting broadcasts.

35.      Throughout these advertisements, Apple gave the impression that Siri would have advanced AI-based features that in fact had yet to be developed.  The advertisements suggested that among other features, Siri would be able to use personal information stored on an iPhone 16 Device to run personalized queries.  For example, Apple suggested that Siri on iPhone 16 Devices would be able to search for the name of an individual the user met several months ago at a specific location, or use information about the user's family and email correspondences to answer a question about when a user's mother's flight would land.[8]  The advertisements likewise suggested that Siri would be able to understand the information on a user's screen and integrate information across apps to perform tasks relying on that information.

36.      On June 10, 2024, in connection with the announcements made at the WWDC conference, Apple posted an Apple Newsroom press release on their website, titled "Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the

---

[8] Omar Sohail, *Apple Intelligence Ad Showcasing The Revamped Version Of Siri That Understood Personal Context Has Been Removed Following Company's Admission That The Feature Is Delayed*, WCCFTECH (Mar. 8, 2025 6:30AM EST), https://wccftech.com/apple-intelligence-ad-showing-new-siri-has-been-removed/.

core of iPhone, iPad and Mac."   In this press release, Apple made the following misrepresentations:

*Image 1*:  *Screenshot from Apple's website announcing "Apple Intelligence"[9]*



"Apple Intelligence – the personal intelligence system for iPhone, iPad, and Mac – combines the power of generative models with personal context to deliver intelligence that's useful and relevant to the user."[10]

"Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[11]

---

[9] June 10, 2024 Apple Press Release, *supra* note 4.

[10] *Id.*

[11] *Id.*

*Image 2*:  *Screenshot showing AI capabilities Apple promised Siri "is able" to deliver*[12]



Siri is able to deliver intelligence that's tailored to the user and their on-device information, like locating details on an upcoming flight or keeping track of a dinner reservation.

"Siri is able to deliver intelligence that's tailored to the user and their on-device information, like locating details on an upcoming flight or keeping track of a dinner reservation."[13]

"Siri can now take hundreds of new actions in and across apps, including finding book recommendations sent by a friend in Messages and Mail."[14]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

_Image 3_:   _Screenshot from Apple's website announcing Siri's AI-powered advanced features[15]_



"With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[16]

---

[15] _Id._

[16] _Id._

1

*Image 4:*  *Screenshot showing advanced messaging capabilities on promised Siri functionality* [17]



"Now Siri can give users device support everywhere they go, answering thousands of questions about how to do something on iPhone, iPad, and Mac."[18]

37.    On September 9, 2024, in connection with the unveiling of the iPhone 16 Products, Apple posted another Apple Newsroom press release on their website, titled "Apple Intelligence Comes to iPhone, iPad, and Mac Starting Next Month."  In this press release, Apple made the following misrepresentation:

---

[17] *Id.*

[18] *Id.*

> "Apple introduced the new iPhone 16 lineup, built from the ground up for Apple Intelligence and featuring the faster, more efficient A18 and A18 Pro chips—making these the most advanced and capable iPhone models ever."[19]

38.    Three months after the WWDC event, in September 2024, Apple held an event at Apple Park to unveil its iPhone 16 lineup.  In the event keynote, rather than correct Apple's prior misleading statements, Apple continued to highlight its Apple Intelligence features and assert that advanced AI-based Siri features were a reason to buy Apple's latest products, including iPhone 16 Devices.[20]  During this event, Apple's SVP of Software Engineering, Craig Federighi, again misleadingly highlighted the purported new Siri features[21]:

> "Siri will be able to tap into your personal context to help you in ways that are unique to you. Like pulling up the recommendation for the TV show that your brother sent you last month. And Siri will gain onscreen awareness. So when your friend texts you about a new album, you'll be able to simply say, 'Play that.' And then you'll be able to take hundreds of new actions in your apps, like updating a friend's contact card with his new address, or adding a set of photos to a specific album. With Siri's personal context understanding and action capabilities, you'll be able to simply say, 'Send Erica the photos from Saturday's barbecue', and Siri will dig up the photos and send them right off."

39.    Apple also advertised these advanced AI-based capabilities in a television commercial in September 2024.  The commercial purported to show advanced AI-based Siri features actually being used by a human, suggesting the features had been developed and were already functional, and presented these features as a reason to purchase an iPhone 16 Device. The advanced features purported to show that Siri was able to obtain and provide information to the user based on integration of all apps on the iPhone, including by being able to search, via

---

[19] Press Release, Apple, Apple Intelligence Comes to iPhone, iPad, and Mac Starting Next Month (Sept. 9, 2024), https://www.apple.com/newsroom/2024/09/apple-intelligence-comes-to-iphone-ipad-and-mac-starting-next-month/.

[20] Apple, *Apple Event – September 9*, YouTube (Streamed live on Sept. 9, 2024) https://www.youtube.com/live/uarNiSl_uh4?t=3184s.

[21] *Id.*

voice command, the name of an individual the user met several months ago at a specific location,[22] and use "personal context" and "onscreen awareness through App intents" to help one schedule messages and appointments.[23] This commercial featured prominent actress Bella Ramsey, and her purported use of the AI-based Siri features in the commercial is highlighted in the photos below:[24]

*Image 6*



---

[22] Sohail, *supra* note 8.

[23] John-Anthony Disotto, *The Bella Ramsey Apple Intelligence ad that disappeared, and why Apple is now facing a false advertising lawsuit*, TechRadar (Mar. 21, 2025), https://www.techradar.com/computing/artificial-intelligence/the-bella-ramsey-apple-intelligence-ad-that-disappeared-and-why-apple-is-now-facing-a-false-advertising-lawsuit.

[24] Screenshots of Apple's online advertisement released in September 2024.

CLASS ACTION COMPLAINT

_Image 7_



40.    This advertisement aired extensively on television and online in late 2024 and early 2025.[25]  In reality, the advanced AI-based capabilities shown in the advertisement and presented as reasons to purchase iPhone 16 Devices were merely concepts that had yet to be developed into a functional product.

41.    On October 28, 2024, Apple posted an Apple Newsroom press release on their website, titled "Apple Intelligence is available today on iPhone, iPad, and Mac."  In this press release, Apple made the following misrepresentations:

_Image 5_:  _Screenshot from Apple's website announcing Siri's AI-powered advanced features_ [26]

---

[25] Sohail, _supra_ note 8.

[26] Press Release, Apple, Apple Intelligence is available today on iPhone, iPad, and Mac (Oct. 28, 2024),        https://www.apple.com/newsroom/2024/10/apple-intelligence-is-available-today-on-iphone-ipad-and-mac/.



"With Apple Intelligence, Siri can draw on a user's personal context to answer questions."[27]

42.    After purchasing and receiving iPhone 16 Devices, some Apple consumers expressed frustration with the Apple Intelligence experience and the absence of its advertised features on social media platforms and Apple support forums, with comments such as the below[28]:

"Just traded in my iPhone 12 Pro Max for the 16 expecting it to have all the features that were advertised with Apple Intelligence. But instead I got a phone virtually the same as my 12 with a bit of a hardware upgrade."

"I would have never upgraded had I known this phone would not have those features. I'm highly disappointed and feel like I was scammed"

"I purchased the phone because it was advertised to have AI."

"Every commercial on TV is broadcasting the 16 model with Apple Intelligence. I understand Apple is not advertising it on their website that it's available yet but people don't necessarily buy their phones by reading the fine print on the Apple website. They are buying their phones through social

[27] *Id.*

[28] *Why is the Apple Intelligence not included on my iPhone 16?*, Apple Support Community (Oct. 2-25, 2024), https://discussions.apple.com/thread/255784851.

media and television commercials that are promoting the phone with this feature and it is not available yet so it's frustrating."

43.    Despite admitting that Apple Intelligence features will not be available as part of the iPhone 16 product cycle, Apple *still* advertises such features prominently on its website. Currently, on Apple's Apple Intelligence homepage, the following misrepresentations are present:

<u>*Image 8*</u>:  *Screenshot showing Apple's Representations of new Siri functionalities*[29]



"The start of a new era for Siri. Siri draws on Apple Intelligence for new superpowers. With an all-new design, richer language understanding, and the ability to type to Siri whenever it's convenient for you, communicating with Siri is more natural than ever.  And with extensive product knowledge and

---

[29] *See* Apple Intelligence, https://www.apple.com/apple-intelligence/ (last visited May 8, 2025).

the ability to tap into ChatGPT when it might be helpful to answer your question, Siri can assist you in brand-new ways."[30]

**D.     Apple Admits that It Promised Apple Intelligence Features, Including Advanced AI-Based Siri Features, That Had Not Been Developed and Will Not Be Available Until 2026 at the Earliest**

44.     On March 7, 2025, John Gruber published a statement he received from Apple spokeswoman Jacqueline Roy, in which she admitted that Apple would not introduce its promised AI-based Siri features until 2026:

> We've . . . been working on a more personalized Siri, giving it more awareness of your personal context, as well as the ability to take action for you within and across your apps. *It's going to take us longer than we thought to deliver on these features and we anticipate rolling them out in the coming year.*

(Emphasis added.)

45.     Gruber criticized Apple's promised AI-based Siri features as having been "vaporware" (imaginary) and Apple's WWDC advertising as being, in retrospect, merely a "concept video." The same day, Apple stopped running advertisements promoting the advanced AI-based Siri features and pulled those advertisements from its website and YouTube account.[31]

**E.     Apple Knew Its Misrepresentations Were False Because Apple Knew It Had Not Yet Developed Its Promised AI-Based Siri Features**

46.     Apple announced advanced AI-based Siri features at the 2024 WWDC as the primary reason for consumers to purchase iPhone 16 Devices, even though many of the core features it touted did not exist and would not exist for *years* (if ever). At the time of the 2024 WWDC announcement, when Apple demonstrated the features through a video mock-up, it

---

[30] *Id.*

[31] *See* John Gruber, *Apple Pulls Bella Ramsey Ad That Promoted Vaporware Personalized Siri Feature*, Daring Fireball (Mar. 8, 2025), https://daringfireball.net/linked/2025/03/08/apple-pulls-bella-ramsey-ad-that-promoted-vaporware-personalized-siri-feature; Sohail, *supra* note 8.

1  lacked a functional prototype of these advanced AI-based Siri features.[32]    Apple had no

2  reasonable basis to believe it could deliver the product it was advertising within the iPhone 16

3  product cycle.    Indeed, from the start of the project, Apple suffered delays in attempting to

4  develop these features.[33]

5         47.    Apple's own team has admitted that the advanced AI-based Siri features that it

6  had advertised as reasons to purchase iPhone 16 Devices had not been developed by the time of

7  the June 10, 2024 WWDC, or at any other time.    At an all-hands meeting for the Siri division

8  following the announcement of the delays, Robby Walker, senior director responsible for Siri,

9  stated that Apple had publicly promoted the technology "before it was ready."[34]    Walker called

10  the delays to the key features "ugly and embarrassing" and stated, "[t]his was not one of these

11  situations where we get to show people our plan after it's done.    We showed people before."[35]

12  He also noted that "to make matters worse," Apple's marketing communications department

13  wanted to promote the enhancements, and, despite not being ready, they were included in a series

14  of marketing campaigns and TV commercials.[36]    Apple touted the features as a "key selling

15  point" of the iPhone 16 line, which otherwise lacked major changes.[37]

16         48.    After repeatedly promising the advanced AI-based Siri features would be

17  available as part of iOS 18 (and that all such features would be available by June 2025 at the

18  latest), Apple has pushed the expected release of these features until *at least* the next full version

19

20  [32] Mark Gurman, *Apple's Artificial Intelligence Efforts Reach a Make-or-Break Point*, Bloomberg
21  (Mar. 2, 2025 8:00 AM EST), https://www.bloomberg.com/news/newsletters/2025-03-02/apple-
    siri-compared-with-alexa-m4-macbook-air-and-ipad-air-2025-coming-soon-m7rn2k2y.

22  [33] Mark Gurman, *Apple's (AAPL) Siri Chief Calls AI Delays Ugly and Embarrassing, Promises
    Fixes*, Bloomberg (Mar. 14, 2025 2:57 PM EST),
23  https://www.bloomberg.com/news/articles/2025-03-14/apple-s-siri-chief-calls-ai-delays-ugly-
    and-embarrassing-promises-fixes..

24
25  [34] *Id.*

26  [35] *Id.*

27  [36] *Id.*

28  [37] *Id.*

of iOS, iOS 19, which is not expected to be released until September 2025 *at the earliest*.[38]  And while Apple is aiming to include these features in iOS 19, Walker has stated that that "doesn't mean that we're shipping then," and Apple has "other commitments across Apple to other projects."[39]

49.    Accordingly, Apple knew that the AI-based Siri features it was advertising at the WWDC and during the Relevant Period were nowhere near close to being ready to introduce.  Moreover, Apple still has no confidence in the timeline for releasing these features, and indeed, Apple has stated that it is not prioritizing the development of these features.  Indeed, some sources even predict that advanced AI-based Siri features will not be ready until iOS 20 at the earliest, likely available only in 2027, *three years* after the June 2024.[40]

50.    In fact, there is no guarantee that the advanced AI-based Siri features Apple promised during the Relevant Period will *ever* be available.  Given that software chief Craig Federighi and other Apple executives have "voiced strong concerns internally that the features didn't work properly—or as advertised—in their personal testing," some within Apple's AI division "believe that work on the features could be scrapped altogether, and that Apple may have to rebuild the functions from scratch."[41]

51.    Apple had strong motives to misrepresent that advanced AI-based Siri features would be available during the iPhone 16 product cycle.  Apple's misrepresentations about advanced AI-based Siri features significantly increased its profit from sales of iPhone 16 Devices.  Apple represented that the AI features it was advertising were unique to Apple's products,

---

[38] Mark Gurman, *Apple Delays Siri Upgrade Indefinitely as AI Concerns Escalate*, Bloomberg (Mar. 7, 2025 5:14 PM EST), https://www.bloomberg.com/news/articles/2025-03-07/apple-confirms-delay-of-ai-infused-personalized-siri-assistant.

[39] Gurman, *AI Delays Ugly and Embarrassing*, *supra* note 33.

[40] Samantha Kelly, *Major Siri Redesign May Be Delayed Again, Report Says*, CNET (Mar. 3, 2025 10:18 AM PST), https://www.cnet.com/tech/services-and-software/major-siri-redesign-may-be-delayed-again-report-says/.

[41] Gurman, *Apple Delays Siri*, *supra* note 38.

including the iPhone 16 Devices, and that the only way to access these features was to purchase these Devices. Apple would not have sold nearly as many iPhone 16 Devices had Apple not misled consumers about the availability of advanced AI-based Siri features on these Devices.

52.     The Attorney General of California issued a pointed legal advisory, the "Legal Advisory on the Application of Existing California Laws to Artificial Intelligence," that specifically warned companies like Apple that California consumer protection laws prohibit them from falsely advertising capabilities of AI products. Apple's legal team would have known about this advisory.

### F.     Plaintiffs Relied on Apple's Material Misrepresentations and Suffered Damages

53.     In its misrepresentations detailed in this complaint, Apple promised to deliver unprecedented AI technology and capabilities for iPhone 16 Devices during the iPhone 16 product cycle, and consumers relied on those promises in purchasing iPhone 16 Devices or in paying more for those Devices than they otherwise would have. These misrepresentations were material to consumers—consumers understood advanced AI-based Siri features to be the primary reason to purchase iPhone 16 Devices, and consumers would not have purchased iPhone 16 Devices, or would not have paid as much for them, had they known that these Devices would not have advanced AI-based Siri features within the iPhone 16 product cycle. Consumers had no way of knowing that the advanced AI-based Siri features Apple had advertised did not exist and would not be available during the iPhone 16 product cycle. Through its misrepresentations, Apple induced millions of consumers to buy iPhone 16 Devices as part of the iPhone 16 product cycle or to pay more for those Devices than they otherwise would have. Apple also wrongly gained an unfair advantage over smartphone competitors and wrongly profited from purchasers of their iPhone 16 Devices who otherwise would have purchased smartphones from Apple's competitors.

54.     Apple's misrepresentations caused Plaintiffs significant harm, including monetary and non-monetary damages, by not delivering features Apple had promised. Class

Members did not receive the benefit of their bargain when purchasing their iPhone 16 Devices. Apple failed to deliver the advanced AI-based features it had promised to deliver during the iPhone 16 product cycle. Even if Apple is able at some point in the future to deliver the advanced AI-based features it had promised to deliver during the iPhone 16 product cycle, other companies may have developed competing products with equal or greater capabilities, so any benefit of receiving these technologies early, as Apple had advertised, will also have been eliminated. Class Members' iPhone 16 Devices are worth significantly less than they would have been had Apple delivered the AI-based Siri features and other advanced AI features it had promised to deliver to consumers by June 2025.

55. Consumers valued Apple's AI-based features at at least $100 per iPhone 16 Device and would not have purchased iPhone 16 Devices, or would have purchased those Devices for a price of at most $100 less than what they paid, had they known that these features would not be delivered as part of the iPhone 16 product cycle. Tens of millions of consumers purchased iPhone 16 Devices in the United States in the week following its introduction, so the Class contains millions of consumers. Accordingly, in failing to deliver these features, Apple caused Class Members hundreds of millions of dollars in losses. Consumers were damaged by at least the amount by which they overpaid for their iPhone 16 Devices based on Apple's misrepresentations. Class Members have a right to monetary relief from this conduct in the form damages, restitution and/or disgorgement.

56. Monetary damages and other legal remedies are inadequate to fully redress Apple's wrongs. Apple continues to market Apple Intelligence and advanced AI-based Siri features as reasons to purchase iPhone 16 Devices. Moreover, many consumers may have viewed Apple's misrepresentations, and not viewed any statement by Apple or others that advanced AI-based Siri features will not be available for iPhone 16 Devices during the iPhone 16 product cycle. To date, Apple has yet to correct its prior misrepresentations about the availability of Apple Intelligence and AI-based Siri features. Accordingly, injunctive relief is appropriate to require Apple: (1) to remove any remaining promises about the availability of Apple Intelligence

and AI-based Siri features prior to the introduction of those features, (2) to engage in an extensive, national advertising campaign to correct its prior misrepresentations detailed in this complaint, and (3) to discontinue sales of iPhone 16 Devices or similar devices until Apple takes actions (1) and (2).

## V.    CLASS ACTION ALLEGATIONS

57.    Plaintiffs seek certification of the following class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4):

> All residents of the United States who purchased any iPhone 16 Device from September 13, 2024 to March 7, 2025.

58.    In addition, Plaintiffs seek certification of the following subclasses:

**California Subclass:** All purchasers of any iPhone 16 Device in California from September 13, 2024 to March 7, 2025.

**Alabama Subclass:** All purchasers of any iPhone 16 Device in Alabama from September 13, 2024 to March 7, 2025.

**Alaska Subclass:** All purchasers of any iPhone 16 Device in Alaska from September 13, 2024 to March 7, 2025.

**Arizona Subclass:** All purchasers of any iPhone 16 Device in Arizona from September 13, 2024 to March 7, 2025.

**Arkansas Subclass:** All purchasers of any iPhone 16 Device in Arkansas from September 13, 2024 to March 7, 2025.

**Colorado Subclass:** All purchasers of any iPhone 16 Device in Colorado from September 13, 2024 to March 7, 2025.

**Connecticut Subclass:** All purchasers of any iPhone 16 Device in Connecticut from September 13, 2024 to March 7, 2025.

**Delaware Subclass:** All purchasers of any iPhone 16 Device in Delaware from September 13, 2024 to March 7, 2025.

**Florida Subclass:** All purchasers of any iPhone 16 Device in Florida from September 13, 2024 to March 7, 2025.

**Georgia Subclass:** All purchasers of any iPhone 16 Device in Georgia from September 13, 2024 to March 7, 2025.

**Hawaii Subclass:** All purchasers of any iPhone 16 Device in Hawaii from

September 13, 2024 to March 7, 2025.

**Idaho Subclass:** All purchasers of any iPhone 16 Device in Idaho from September 13, 2024 to March 7, 2025.

**Illinois Subclass:** All purchasers of any iPhone 16 Device in Illinois from September 13, 2024 to March 7, 2025.

**Indiana Subclass:** All purchasers of any iPhone 16 Device in Indiana from September 13, 2024 to March 7, 2025.

**Iowa Subclass:** All purchasers of any iPhone 16 Device in Iowa from September 13, 2024 to March 7, 2025.

**Kansas Subclass:** All purchasers of any iPhone 16 Device in Kansas from September 13, 2024 to March 7, 2025.

**Kentucky Subclass:** All purchasers of any iPhone 16 Device in Kentucky from September 13, 2024 to March 7, 2025.

**Louisiana Subclass:** All purchasers of any iPhone 16 Device in Louisiana from September 13, 2024 to March 7, 2025.

**Maine Subclass:** All purchasers of any iPhone 16 Device in Maine from September 13, 2024 to March 7, 2025.

**Maryland Subclass:** All purchasers of any iPhone 16 Device in Maryland from September 13, 2024 to March 7, 2025.

**Massachusetts Subclass:** All purchasers of any iPhone 16 Device in Massachusetts from September 13, 2024 to March 7, 2025.

**Michigan Subclass:** All purchasers of any iPhone 16 Device in Michigan from September 13, 2024 to March 7, 2025.

**Minnesota Subclass:** All purchasers of any iPhone 16 Device in Minnesota from September 13, 2024 to March 7, 2025.

**Mississippi Subclass:** All purchasers of any iPhone 16 Device in Mississippi from September 13, 2024 to March 7, 2025.

**Missouri Subclass:** All purchasers of any iPhone 16 Device in Missouri from September 13, 2024 to March 7, 2025.

**Montana Subclass:** All purchasers of any iPhone 16 Device in Montana from September 13, 2024 to March 7, 2025.

**Nebraska Subclass:** All purchasers of any iPhone 16 Device in Nebraska from September 13, 2024 to March 7, 2025.

**Nevada Subclass:** All purchasers of any iPhone 16 Device in Nevada from September 13, 2024 to March 7, 2025.

**New Hampshire Subclass:** All purchasers of any iPhone 16 Device in New Hampshire from September 13, 2024 to March 7, 2025.

**New Jersey Subclass:** All purchasers of any iPhone 16 Device in New Jersey from September 13, 2024 to March 7, 2025.

**New Mexico Subclass:** All purchasers of any iPhone 16 Device in New Mexico from September 13, 2024 to March 7, 2025.

**New York Subclass:** All purchasers of any iPhone 16 Device in New York from September 13, 2024 to March 7, 2025.

**North Carolina Subclass:** All purchasers of any iPhone 16 Device in North Carolina from September 13, 2024 to March 7, 2025.

**North Dakota Subclass:** All purchasers of any iPhone 16 Device in North Dakota from September 13, 2024 to March 7, 2025.

**Ohio Subclass:** All purchasers of any iPhone 16 Device in Ohio from September 13, 2024 to March 7, 2025.

**Oklahoma Subclass:** All purchasers of any iPhone 16 Device in Oklahoma from September 13, 2024 to March 7, 2025.

**Oregon Subclass:** All purchasers of any iPhone 16 Device in Oregon from September 13, 2024 to March 7, 2025.

**Pennsylvania Subclass:** All purchasers of any iPhone 16 Device in Pennsylvania from September 13, 2024 to March 7, 2025.

**Rhode Island Subclass:** All purchasers of any iPhone 16 Device in Rhode Island from September 13, 2024 to March 7, 2025.

**South Carolina Subclass:** All purchasers of any iPhone 16 Device in South Carolina from September 13, 2024 to March 7, 2025.

**South Dakota Subclass:** All purchasers of any iPhone 16 Device in South Dakota from September 13, 2024 to March 7, 2025.

**Tennessee Subclass:** All purchasers of any iPhone 16 Device in Tennessee from September 13, 2024 to March 7, 2025.

**Texas Subclass:** All purchasers of any iPhone 16 Device in Texas from September 13, 2024 to March 7, 2025.

**Utah Subclass:** All purchasers of any iPhone 16 Device in Utah from September

13, 2024 to March 7, 2025.

**Vermont Subclass:** All purchasers of any iPhone 16 Device in Vermont from September 13, 2024 to March 7, 2025.

**Virginia Subclass:** All purchasers of any iPhone 16 Device in Virginia from September 13, 2024 to March 7, 2025.

**Washington Subclass:** All purchasers of any iPhone 16 Device in Washington from September 13, 2024 to March 7, 2025.

**West Virginia Subclass:** All purchasers of any iPhone 16 Device in West Virginia from September 13, 2024 to March 7, 2025.

**Wisconsin Subclass:** All purchasers of any iPhone 16 Device in Wisconsin from September 13, 2024 to March 7, 2025.

**Wyoming Subclass:** All purchasers of any iPhone 16 Device in Wyoming from September 13, 2024 to March 7, 2025.

59.     The classes and subclasses defined above are collectively referred to herein as the "Class," unless specifically stated otherwise.

60.     Excluded from the Class are Apple, its subsidiaries, affiliates, officers, directors, and employees.

61.     **Numerosity** under Fed. R. Civ. P. 23(a)(1):  The members of each class are so numerous and geographically dispersed that individual joinder of all class members is impracticable.   Plaintiffs are informed and believe—based upon the publicly-available information discussed herein—that there are millions of class members, making joinder impracticable.  Those individuals' identities are available through Apple's records, and class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

62.     **Commonality and Predominance** under Fed. R. Civ. P. 23(a)(2) and (b)(3), respectively**:** Apple has acted with respect to Plaintiffs and the other members of the Class in a manner generally applicable to each of them. There is a well-defined community of interest in the questions of law and fact involved, which affect all Class Members. The questions of law and

fact common to the Class predominate over the questions that may affect individual class members, including the following:

    a.   Whether Apple engaged in unlawful, unfair or deceptive business practices by advertising and selling the iPhone 16 Devices;

    b.   Whether Apple's uniform conduct concerning Apple Intelligence and in advertising and selling the iPhone 16 Devices was false, misleading or deceptive;

    c.   Whether Apple misrepresented, omitted, and/or failed to adequately disclose that Apple Intelligence features would not be available when promised on the iPhone 16 Devices;

    d.   Whether Apple knew or by the exercise of reasonable care should have known, that its advertising and marketing were and are misleading in violation of statutory and common law;

    e.   Whether Apple's uniform conduct violated each of the causes of action set forth below;

    f.   Whether the cost of the iPhone 16 Devices was falsely inflated by Apple Intelligence functionality that either never materialized or was significantly delayed;

    g.   Whether Plaintiffs and the Class paid more money for the Products than they actually received;

    h.   Whether Apple was unjustly enriched by its unlawful conduct;

    i.   Whether compensatory, trebled, consequential, or statutory damages, restitution, or attorneys' fees should be awarded to Plaintiffs and the other Class members, where permissible by statute; and

    j.   Whether injunctive and/or other equitable relief is appropriate, and what that relief should be.

63.    **Typicality** under Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

64.    **Adequacy of Representation** under Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are adequate class representatives because their interests do not conflict with the interests of class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

65.    **Declaratory and Injunctive Relief** under Fed. R. Civ. P. 23(b)(2): The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Apple. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class Members and impair their interests. Apple has acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

66.    Injunctive or declaratory relief is appropriate because Apple has acted or refused to act on grounds that apply generally to the Class.  Injunctive relief is particularly necessary in this case because Plaintiffs and other Class Members continue to own their iPhone 16 Devices and do not benefit from the promised capabilities, and Apple can continue to make false promises that may induce Class members or other consumers to buy the next iPhone release to receive such benefits.  Apple should be enjoined from continuing the *status quo*, which currently is to convince iPhone users to purchase their newest product based on promises it does not intend to deliver.  At the very least, iPhone users should be told whether a highly advertised feature has actually been developed.

67.    **Superiority** under Fed. R. Civ. P. 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual

difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for Class Members to individually seek redress for Apple's wrongful conduct. Even if Class Members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

68.    Plaintiffs bring the following causes of action. Counts I through III brought under California law apply to the entire Class because Apple's conduct underlying those Counts, as described in this complaint, occurred in material part in California and Apple is headquartered in California.

## <u>COUNT ONE</u>

**Violations Of California's False And Misleading Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code, § 17500 et seq.**

***(On Behalf of the California Subclass and the Nationwide Class)***

69.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

70.    Apple's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. Apple mispresented the Apple Intelligence functionalities and capabilities, concealed delays in software rollout, and misrepresented the purpose and extent of related iOS updates.

71.    By its actions, Apple disseminated uniform advertising regarding Apple Intelligence based out of California, and governed by California law. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof.

1      Code § 17500, et seq.  Such advertisements were intended to and likely did deceive the

2      consuming public for the reasons detailed herein.

3          72.     The above-described false, misleading, and deceptive advertising Apple

4      disseminated continues to have a likelihood to deceive in that Apple failed to disclose the true

5      nature of Apple Intelligence functionality and related iOS software updates and rollouts,

6      continuing to deceive consumers.

7          73.     Apple continued to misrepresent to consumers that Apple Intelligence capabilities

8      were fully operational and would be functional on the iPhone 16 Devices, even though they were

9      not even fully developed.  Had Apple disclosed this, rather than falsely advertising Apple

10     Intelligence's non-existent functionalities, consumers would not have purchased their iPhone 16

11     Devices or would not have purchased their iPhone 16 Devices for the premium prices that Apple

12     charged.

13         74.     In making and disseminating the statements alleged herein, Apple knew, or should

14     have known, that its advertisements were untrue and misleading in violation of California law.

15     Plaintiffs and other class members based their decisions to download iOS 15 on Apple's omitted

16     material facts.  Plaintiffs and class members were injured in fact and lost money and property as

17     a result.

18         75.     The misrepresentations and non-disclosures by Apple of the material facts

19     described and detailed herein constitute false and misleading advertising and, therefore,

20     constitute violations of Cal. Bus. & Prof. Code § 17500, et seq.

21         76.     As a result of Apple's wrongful conduct, Plaintiffs and the class members have

22     suffered economic injury and other harm and seek damages, restitution and/or disgorgement, as

23     appropriate.

24         77.     Monetary damages and other legal remedies alone are inadequate to address

25     Apple's wrongful practices described in this complaint.  Among other reasons, such remedies

26     would not end Apple's wrongful practices.  Plaintiffs are entitled to injunctive relief to address

27

28

Apple's wrongful conduct.  Plaintiffs further seek any additional equitable relief to which they may be entitled.

**COUNT TWO**

**Violations Of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code, § 17200 et seq.**

***(On Behalf of the California Subclass and the Nationwide Class)***

78.     Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

79.     Apple is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

80.     Apple violated the UCL by engaging in unlawful, unfair, and deceptive business acts and practices.

81.     Apple has engaged in "unlawful" business practices by violating multiple laws, including the False and Misleading Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1780, et seq.; and California common law.

82.     Apple violated § 17200's prohibition against "fraudulent" conduct by making misleading statements in its pervasive marketing and advertising of Apple Intelligence and the iPhone 16 Products, regarding Apple Intelligence capabilities, without disclosing the critically important information that the capabilities were not legitimate.  Apple's representations and omissions were likely to mislead reasonable consumers and did mislead them. Plaintiffs and other members of the Class relied on Apple's misrepresentations and would not have purchased iPhone 16 Devices, or would not have paid such a premium price for the iPhone 16 Devices, if they knew that such promised capabilities would not be delivered.

83.     Apple's conduct is also "unfair" pursuant to the UCL. Apple's conduct is substantially injurious to consumers like Plaintiffs and other Class members, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct—Apple acted unfairly by advertising and selling products while concealing the delay or non-existence of

37

CLASS ACTION COMPLAINT

promised capabilities.  Apple engaged in this conduct at the expense of its consumers' rights when other, lawful alternatives were available—such as providing consumers with full information about the iPhone 16 Devices and Apple Intelligence functionality, among other alternatives.

84.    As a result of Apple's wrongful conduct, Plaintiffs and the class members have suffered economic injury and other harm.

85.    Monetary damages and other legal remedies are inadequate to address Apple's wrongful practices described in this complaint.  Among other reasons, such remedies would not end Apple's wrongful practices.  Plaintiffs are entitled to injunctive relief to address Apple's wrongful conduct.  Plaintiffs further seek any additional equitable relief to which they may be entitled.

## COUNT THREE

**Violations Of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code, § 1750 et seq.**

***(On Behalf of the California Subclass and the Nationwide Class)***

86.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

87.    Apple is a "person" as defined by the CLRA in Cal. Civ. Code § 1761(c).

88.    Apple Intelligence and the iPhone 16 Devices are "goods" as defined by the CLRA in Cal. Civ. Code §1761(a), and Plaintiffs and class members are "consumers" as defined by the CLRA in Cal. Civ. Code §1761(d).

89.     The purchase or lease of Apple Intelligence and/or Affected Devices is a "transaction" under the CLRA in Cal. Civ. Code §1761(e).

90.    Apple violated the CLRA by engaging in unfair methods of competition and unfair or deceptive acts or practices through the sale of Apple Intelligence and the iPhone 16 Devices to Plaintiffs and class members, through the misleading, deceptive and fraudulent misrepresentations detailed in this complaint.  These acts and practices were intended to and did

result in the sales of products and services to Plaintiffs and the Class Members in violation of Civil Code § 1770, including the following sections: Representing that goods or services have characteristics, uses, or benefits, that they do not (Section 1770(a)(5)); Representing that goods or services are of a particular standard, quality, or grade when they are not (Section 1770(a)(7)); Advertising goods or services with intent not to sell them as advertised (Section 1770(a)(9)); and Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Section 1770(a)(16)).

91. Apple's representations and omissions were material because they were likely to, and did, deceive reasonable consumers. These wrongful acts and practices were a substantial factor in Plaintiffs' and class members' decisions to purchase the iPhone 16 Devices, and to pay a premium price for such devices with the promised features and capabilities.

92. As a result of Apple's misconduct in violation of the CLRA, Plaintiffs and the class members have suffered economic injury and other harm. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the class.

93. Monetary damages and other legal remedies are inadequate to address Apple's wrongful practices described in this complaint. Among other reasons, such remedies would not end Apple's wrongful practices. Plaintiffs are entitled to, and do seek injunctive relief to address Apple's wrongful conduct pursuant to Section 1780(a) of the Act, to protect the consuming public by prohibiting Apple from continuing its conduct in violation of the CLRA. Plaintiffs further seek any additional equitable relief to which they may be entitled.

## COUNT FOUR

### Violations Of The Alabama Deceptive Trade Practices Act
### Ala. Code § 8-19-1, Et Seq.

### *(On Behalf of the Alabama Subclass)*

94. Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

95.     This claim is brought by Plaintiffs on behalf of residents of Alabama who are members of the Alabama Subclass.

96.     The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including: "(27) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.

97.     Plaintiffs and class members are "consumers" within the meaning of ALA. CODE . § 8-19-3(2).

98.     Plaintiffs, class members and Apple are "persons" within the meaning of ALA. CODE § 8-19-3(3).

99.     Defendant was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

100.    Pursuant to Alabama Code § 8-19-10, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each plaintiff.

101.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under ALA. CODE . § 8-19-1, et seq.

102.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with ALA. CODE § 8-19-10(e) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Alabama purchasers who are members of the Class.

## COUNT FIVE

**Violations Of The Alaska Unfair Trade Practices and Consumer Protection Act
Alaska Stat. Ann. § 45.50.471, Et Seq.**

***(On Behalf of the Alaska Subclass)***

40
CLASS ACTION COMPLAINT

1    103.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully

2    set forth herein.

3    104.    This claim is brought by Plaintiffs on behalf of residents of Alaska who are

4    members of the Alaska Subclass.

5    105.    The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA")

6    declared unfair methods of competition and unfair or deceptive acts or practices in the conduct

7    of trade or commerce unlawful, including "(12) using or employing deception, fraud, false

8    pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a

9    material fact with intent that others rely upon the concealment, suppression or omission in

10    connection with the sale or advertisement of goods or services whether or not a person has in fact

11    been misled, deceived or damaged." ALASKA STAT. ANN. § 45.50.471.

12    106.    Pursuant to ALASKA STAT. ANN. § 45.50.531, Plaintiffs seek monetary relief

13    against Defendant measured as the greater of (a) three times the actual damages in an amount to

14    be determined at trial or (b) $500 for each plaintiff.

15    107.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or

16    deceptive practices pursuant to ALASKA STAT. ANN. § 45.50.535(b)(1), attorneys' fees, and

17    any other just and proper relief available under the Alaska CPA.

18    108.    This count is included here as a placeholder for notice purposes only.  Prior to the

19    filing of this Complaint, Plaintiffs sent a letter complying with ALASKA STAT. ANN.

20    § 45.50.535(b)(1) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend

21    to amend their Complaint to bring this count on behalf of Alaska purchasers who are members

22    of the Class.

### COUNT SIX

**Violations Of The Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. § 44-1521, Et Seq.**

***(On Behalf of the Arizona Subclass)***

109.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

110.    This claim is brought by Plaintiffs on behalf of residents of Arizona who are members of the Arizona Subclass.

111.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

112.    Defendant, Plaintiffs, and class members are "persons" within the meaning of the Arizona CFA, ARIZ. REV. STAT. § 44-1521(6).

113.    The iPhone 16 Products are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

114.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

115.    Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial.

116.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT SEVEN

### Violations Of The Arkansas Deceptive Trade Practices Act
### Ark. Code Ann. § 4-88-101, Et Seq.

#### *(On Behalf of the Arkansas Subclass)*

117.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

118.    This claim is brought by Plaintiffs on behalf of residents of Arkansas who are members of the Arkansas Subclass.

119.    The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." ARK. CODE ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." ARK. CODE ANN. § 4-88-108.

120.    Defendant, Plaintiffs, and class members are "persons" within the meaning of ARK. CODE ANN. § 4-88-102(5).

121.    The iPhone 16 Products at issue constitute "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

122.    Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial.

123.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT EIGHT

### Violations Of The Colorado Consumer Protection Act
### Colo. Rev. Stat. § 6-1-101, Et Seq.

#### *(On Behalf of the Colorado Subclass)*

124.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

125.    This claim is brought by Plaintiffs on behalf of residents of Colorado who are members of the Colorado Subclass.

126.    The Colorado Consumer Protection Act ("Colorado CPA") prohibits deceptive practices in the course of a person's business including, but not limited to, "mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions"; and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." COLO. REV. STAT. § 6-1-105.

127.    Defendant is a "person" under COLO. REV. STAT. § 6-1-102(6).

128.    Plaintiffs and class members are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a).

129.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

130.    Pursuant to COLO. REV. STAT. § 6-1-113, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each plaintiff or class member.

131.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

## COUNT NINE

### Violations Of The Connecticut Unfair Trade Practices Act
### Conn. Gen. Stat. § 42-110A, Et Seq.

### *(On Behalf of the Connecticut Subclass)*

132.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

133.    This claim is brought by Plaintiffs on behalf of residents of Connecticut who are members of the Connecticut Subclass.

44

134.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

135.    Defendant is a "person" within the meaning of CONN. GEN. STAT. § 42-110a(3).

136.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of CONN. GEN. STAT. § 42-110a(4).

137.    Plaintiffs and class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to CONN. GEN. STAT. § 42-110g.

## COUNT TEN

### Violations Of The Delaware Consumer Fraud Act
### Del. Code Ann. Tit. 6, § 2513, Et Seq.

### *(On Behalf of the Delaware Subclass)*

138.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

139.    This claim is brought by Plaintiffs on behalf of residents of Delaware who are members of the Delaware Subclass.

140.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." DEL. CODE ANN. tit. 6, § 2513(a).

141.    Defendant is a "person" within the meaning of DEL. CODE ANN. tit. 6, § 2511(7).

142.    Defendant's actions, as set forth above, occurred in the conduct of trade or commerce.

143.    Plaintiffs seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct. *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1980). Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

## COUNT ELEVEN

### Violations Of The D.C. Consumer Protection Procedures Act
### D.C. Code § 28-3901, Et Seq.

#### *(On Behalf of the D.C Subclass)*

144.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

145.    This claim is brought by Plaintiffs on behalf of residents of the District of Columbia who are members of the D.C. Subclass.

146.    The Consumer Protection Procedures Act ("District of Columbia CPPA") states: "it shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to," inter alia, "(f) fail to state a material fact if such failure tends to mislead"; or "(f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. CODE § 28-3904.

147.    Defendant is a "person" under D.C. CODE § 28-3901(a)(1).

148.    Plaintiffs and class members are "consumers," as defined by D.C. CODE § 28-3901(1)(2), who purchased the iPhone 16 Products at issue.

149.    Defendant's actions as set forth in this complaint constitute "trade practices" under D.C. CODE § 28-3901.

150.    Plaintiffs and class members are entitled to recover treble damages or $1500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the court deems proper, under D.C. CODE § 28-3901.

## COUNT TWELVE

**Florida Deceptive and Unfair Trade Practices Act
Fla. Stat. §§ 501.201, Et Seq.**

***(On Behalf of the Florida Subclass)***

151.    The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

152.    Apple engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) during all relevant periods by, at a minimum, advertising, offering for sale, and selling the iPhone 16 Products described herein in Florida, to Florida Subclass members, and throughout the United States.

153.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

154.    Apple engaged in unfair, unconscionable and deceptive acts or practices in violation of the FDUTPA, as described herein.

155.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

156.    Apple knew or should have known that its conduct was in violation of the FDUTPA.  Apple intended to mislead Plaintiff and Florida Subclass members and induce them to rely on its misrepresentations and omissions.

157.    Apple owed and continues to owe Plaintiff and Florida Subclass members a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the iPhone 16 Products.

158.    Had Apple disclosed to Plaintiff and Florida Subclass members that it misrepresented the Apple Intelligence capabilities for the iPhone 16 Devices, omitted material information regarding the performance degradation of the iPhone 16 Devices caused by Apple

Intelligence iOS software updates, and was otherwise engaged in deceptive, common business practices, Apple would have been unable to continue that business and it would have been forced to disclose the false advertising campaign it had engaged in and the performance degradation in its devices caused by Apple Intelligence iOS updates.  Instead, Apple represented that the Apple Intelligence capabilities were functioning and would be available for use in the iPhone 16 Devices.  Plaintiff and the Florida Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

159.    Despite knowing the true nature of their products and practices for years, Apple intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the iPhone 16 Products, with the intent to mislead Plaintiff and Florida Subclass members, and continued to engage in unfair and deceptive practices in violation of the FDUTPA.  Apple acted intentionally, knowingly, and maliciously to violate Florida's Deceptive and Unfair Trade Practices Act, and recklessly disregarded Plaintiff and Florida Subclass members' rights.  Apple's knowledge of the truth of the non-existence and severe delay of Apple Intelligence capabilities put it on notice that Apple Intelligence functionality and the iPhone 16 Devices were not as Apple advertised.

160.    As a direct and proximate result of Apple's unfair and deceptive acts and practices, Plaintiff and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

161.    Plaintiff and Florida Subclass members were harmed and suffered damages as a result of Apple's actions. Plaintiff seeks all damages available as a result of Apple's violation of the Florida Deceptive and Unfair Trade Practices Act.

## **COUNT THIRTEEN**

**Violations Of The Georgia Fair Business Practices Act**
**Ga. Code Ann. § 10-1-390, Et Seq.**

***(On Behalf of the Georgia Subclass)***

162.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

163.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with GA. CODE ANN. § 10-1-399(b) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Georgia purchasers who are members of the Class.

## COUNT FOURTEEN

**Violations Of The Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code Ann § 10-1-370, Et Seq.**

*(On Behalf of the Georgia Subclass)*

164.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

165.    This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Georgia Subclass.

166.    Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA") prohibits "deceptive trade practices," which include "advertises goods or services with intent not to sell them as advertised"; or "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann § 10-1-372(a).

167.    Defendant, Plaintiffs, and class members are "persons" within the meaning of GA. CODE ANN. § 10-1-371(5).

168.    Plaintiffs seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under GA. CODE ANN. § 10-1-373.

## COUNT FIFTEEN

**Violations Of The Hawaii Act § 480-2(A)**
**Haw. Rev. Stat. § 480, Et Seq.**

*(On Behalf of the Hawaii Subclass)*

49
CLASS ACTION COMPLAINT

169.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

170.    This claim is brought by Plaintiffs on behalf of residents of Hawaii who are members of the Hawaii Subclass.

171.    HAW. REV. STAT. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

172.    Defendant is a "person" under HAW. REV. STAT. § 480-1.

173.    Plaintiffs and class members are "consumer[s]" as defined by HAW. REV. STAT. § 480-1, who purchased the iPhone 16 Products.

174.    Pursuant to HAW. REV. STAT. § 480-13, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) $1000 and (b) threefold actual damages in an amount to be determined at trial.

175.    Under HAW. REV. STAT. § 480-13.5, Plaintiffs seek an additional award against Defendant of up to $10,000 for each violation directed at a Hawaii elder.  Defendant knew or should have known that its conduct was directed to one or more Class members who are elders.  Defendant's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  Class members who are elders are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered a substantial physical, emotional, or economic damage resulting from Defendant's conduct.

## COUNT SIXTEEN

### Violations Of The Idaho Consumer Protection Act
### Idaho Code Ann. § 48-601, Et Seq.

### *(On Behalf of the Idaho Subclass)*

176.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT

177.    This claim is brought by Plaintiffs on behalf of residents of Idaho who are members of the Idaho Subclass.

178.    The Idaho Consumer Protection Act ("Idaho CPA") prohibits deceptive business practices, including, but not limited to, "(9) Advertising goods or services with intent not to sell them as advertised"; "(17) [e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer"; or "(18) engaging in any unconscionable method, act or practice in the conduct of trade or commerce," IDAHO CODE ANN. § 48-603.

179.    Defendant is a "person" under IDAHO CODE ANN. § 48-602(1).

180.    Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under IDAHO CODE ANN. § 48-602(2).

181.    Pursuant to IDAHO CODE ANN. § 48-608, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1000 for each plaintiff.

182.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

## COUNT SEVENTEEN

**Violations Of The Illinois Consumer Fraud And Deceptive Business Practices Act
815 Ill. Comp. Stat. 505/1, Et Seq., And 720 Ill. Comp. Stat. 295/1A**

***(On Behalf of the Illinois Subclass)***

183.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

184.    This claim is brought by Plaintiffs on behalf of residents of Illinois who are members of the Illinois Subclass.

185.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILL. COMP. STAT. 505/2.

186.    Defendant is a "person" as that term is defined in 815 ILL. COMP. STAT. 505/1(c).

187.    Plaintiffs and class members are "consumers" as that term is defined in 815 ILL. COMP. STAT. 505/1(e).

188.    Pursuant to 815 ILL. COMP. STAT. 505/10a(a), Plaintiffs seek monetary relief against Defendant in the amount of actual damages as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

189.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILL. COMP. STAT. 505/1, et seq.

### COUNT EIGHTEEN

**Violations Of The Indiana Deceptive Consumer Sales Act
Ind. Code § 24-5-0.5-3, Et Seq.**

***(On Behalf of the Indiana Subclass)***

190.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

191.    This claim is brought by Plaintiffs on behalf of residents of Indiana who are members of the Indiana Subclass.

192.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in "deceptive business practice[s]" or acts, including but not limited to representations that "such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have." IND. CODE § 24-5-0.5-3(b).

193.    Defendant is a "person" within the meaning of IND. CODE § 25-5-0.5-2(a)(2), and a "supplier" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

194.    Plaintiffs' payments for the iPhone 16 Products are "consumer transactions" within the meaning of IND. CODE § 24-5-0.5-2(a)(3).

195.    Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1000 for Defendant's willfully deceptive acts.

196.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendant's conduct.

197.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with IND. CODE § 24-5-0.5-5(a) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Indiana purchasers who are members of the Class.

## COUNT NINETEEN

**Violations Of The Iowa Private Right Of Action For Consumer Frauds Act
Iowa Code § 714H.1, Et Seq.**

**(On Behalf of the Iowa Subclass)**

198.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

199.    This claim is brought by Plaintiffs on behalf of residents of Iowa who are members of the Iowa Subclass.

200.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment,

1    suppression or omission in connection with the advertisement, sale, or lease of consumer

2    merchandise." Iowa Code § 714H.3.

3        201.    Defendant is a "person" under Iowa Code § 714H.2(7).

4        202.    Plaintiffs and class members are "consumers" as defined by Iowa Code § 714H.2(3),

5    who purchased the iPhone 16 Products.

6        203.    Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Defendant's

7    unfair and/or deceptive acts or practices; actual and statutory damages; attorneys' fees; and other

8    such equitable relief as the court deems necessary to protect the public from further violations of

9    the Iowa CFA.

10                          **COUNT TWENTY**

11            **Violations Of The Kansas Consumer Protection Act**
              **Kan. Stat. Ann. § 50-623, Et Seq.**
12

13                    ***(On Behalf of the Kansas Subclass)***

14        204.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully

15    set forth herein.

16        205.    This claim is brought by Plaintiffs on behalf of residents of Kansas who are

17    members of the Kansas Subclass.

18        206.    The Kansas Consumer Protection Act ("Kansas CPA") states "[n]o supplier shall

19    engage in any deceptive act or practice in connection with a consumer transaction." KAN. STAT.

20    ANN. § 50-626(a). Deceptive acts or practices include, but are not limited to, "the willful use, in

21    any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a

22    material fact"; "the willful failure to state a material fact, or the willful concealment, suppression

23    or omission of a material fact"; and "Property or services have sponsorship, approval,

24    accessories, characteristics, ingredients, uses, benefits or quantities that they do not have,"

25    "whether or not any consumer has in fact been misled." KAN. STAT. ANN. § 50-626.

26        207.    Plaintiffs and class members are "consumers" within the meaning of KAN. STAT.

27    ANN. § 50-624(b), who purchased the iPhone 16 Products.

28

208.    The sale of iPhone 16 Products to Plaintiffs was a "consumer transaction" within the meaning of KAN. STAT. ANN. § 50-624(c).

209.    Pursuant to KAN. STAT. ANN. § 50-634, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

210.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under KAN. STAT. ANN. § 50-623, et seq.

**COUNT TWENTY-ONE**

**Violations Of The Kentucky Consumer Protection Act
Ky. Rev. Stat. Ann. § 367.110, Et Seq.**

***(On Behalf of the Arizona Subclass)***

211.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

212.    This claim is brought by Plaintiffs on behalf of residents of Kentucky who are members of the Kentucky Subclass.

213.    The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." KY. REV. STAT. ANN. § 367.170(1).

214.    Defendant, Plaintiffs, and Class members are "persons" within the meaning of KY. REV. STAT. ANN. § 367.110(1).

215.    Defendant engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. ANN. § 367.110(2).

216.    Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs seek to recover actual damages in an amount to be determined at trial; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

55
CLASS ACTION COMPLAINT

**COUNT TWENTY-TWO**

**Violations Of The Louisiana Unfair Trade Practices And Consumer Protection Law
La. Rev. Stat. Ann. § 51:1401, Et Seq.**

*(On Behalf of the Louisiana Subclass)*

217.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

218.    This claim is brought by Plaintiffs on behalf of residents of Louisiana who are members of the Louisiana Subclass.

219.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. ANN. § 51:1405(A).

220.    Defendant, Plaintiffs, and class members are "persons" within the meaning of LA. REV. STAT. ANN. § 51:1402(8).

221.    Plaintiffs and class members are "consumers" within the meaning of LA. REV. STAT. ANN. § 51:1402(1).

222.    Defendant engaged in "trade" or "commerce" within the meaning of LA. REV. STAT. ANN. § 51:1402(9).

223.    Pursuant to LA. REV. STAT. ANN. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for knowing violations of the Louisiana CPL; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. ANN. § 51:1409.

**COUNT TWNETY-THREE**

**Violations Of The Maine Unfair Trade Practices Act
Me. Rev. Stat. Ann. Tit. 5, § 205-A, Et Seq.**

*(On Behalf of the Maine Subclass)*

CLASS ACTION COMPLAINT

1    224.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

225.    This claim is brought by Plaintiffs on behalf of residents of Maine who are members of the Maine Subclass.

226.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." ME. REV. STAT. ANN. tit. 5, § 207.

227.    Defendant, Plaintiffs, and class members are "persons" within the meaning of ME. REV. STAT. ANN. tit. § 5, 206(2).

228.    Defendant is engaged in "trade" or "commerce" within the meaning of ME. REV. STAT. ANN. tit. § 5, 206(3).

229.    Pursuant to ME. REV. STAT. ANN. tit. 5, § 213, Plaintiffs seek an order enjoining Defendant's unfair and/or deceptive acts or practices.

230.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with ME. REV. STAT. ANN. tit. 5, § 213(1-A) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Maine purchasers who are members of the Class.

## COUNT TWENTY-FOUR

**Violations Of The Maryland Consumer Protection Act**
**Md. Code, Com. Law § 13-101, Et Seq.**

***(On Behalf of the Maryland Subclass)***

231.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

232.    This claim is brought by Plaintiffs on behalf of residents of Maryland who are members of the Maryland Subclass.

233.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive;" "[a]dvertisement or offer of consumer goods, consumer realty, or consumer services: [] [w]ithout intent to sell, lease, or rent them as advertised or offered;" and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," MD. CODE, COM. LAW § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

234.    Defendant, Plaintiffs, and class members are "persons" within the meaning of MD. CODE, COM. LAW § 13-101(h).

235.    Pursuant to MD. CODE, COM. LAW § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT TWNETY-FIVE

**Violations Of The Massachusetts General Law Chapter 93(A)**
**Mass. Gen. Laws Ch. 93A, § 1, Et Seq.**

*(On Behalf of the Massachusetts Subclass)*

236.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

237.    This claim is brought by Plaintiffs on behalf of residents of Massachusetts who are members of the Massachusetts Subclass.

238.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN. LAWS Ch. 93A, § 2.

239.    Defendant, Plaintiffs, and class members are "persons" within the meaning of MASS. GEN. LAWS Ch. 93A, § 1(a).

240.    Defendant engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS Ch. 93A, § 1(b).

241.    Pursuant to MASS. GEN. LAWS Ch. 93A, § 9, Plaintiffs will seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each plaintiff.  Because Defendant's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, up to three times actual damages, but no less than two times actual damages.

242.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

243.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with MASS. GEN. LAWS ch. 93A, § 9(3) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Massachusetts purchasers who are members of the Class.

## COUNT TWENTY-SIX

### Violations Of The Michigan Consumer Protection Act
### Mich. Comp. Laws § 445.903, Et Seq.

### *(On Behalf of the Michigan Subclass)*

244.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

245.    This claim is brought by Plaintiffs on behalf of residents of Michigan who are members of the Michigan Subclass.

246.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" "[a]dvertising

or representing goods or services with intent not to dispose of those goods or services as advertised or represented;" or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

247. Plaintiffs and class members are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

248. Defendant is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

249. Plaintiffs seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

## COUNT TWENTY-SEVEN

### Violations Of The Minnesota Prevention Of Consumer Fraud Act
### Minn. Stat. § 325F.68, Et Seq.

#### *(On Behalf of the Minnesota Subclass)*

250. Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

251. This claim is brought by Plaintiffs on behalf of residents of Minnesota who are members of the Minnesota Subclass.

252. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1).

253. Each purchase of an iPhone 16 Product constitutes "merchandise" within the meaning of MINN. STAT. § 325F.68(2).

254.    Pursuant to MINN. STAT. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

## COUNT TWENTY-EIGHT

### Violations Of The Minnesota False Statement in Advertisement Act
### Minn. Stat. Ann. § 325F.67, Et Seq.

*(On Behalf of the Minnesota Subclass)*

255.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

256.    This claim is brought by Plaintiffs on behalf of residents of Minnesota who are members of the Minnesota Subclass.

257.    The Minnesota False Statement in Advertisement Act prohibits the making of any advertisement that contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading. Minn. Stat. Ann. § 325F.67.

258.    Apple's material misrepresentations, omissions, and failures to disclose described herein were unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Subclass under the Minnesota False Statement in Advertisement Act, Minn. Stat. Ann. § 325F.67, causing damages to Plaintiffs and members of the Minnesota Subclass.

259.    As a result of Defendants' violations, Plaintiffs and members of the Minnesota Subclass suffered damages and are therefore entitled to recover actual, statutory, treble and/or punitive damages, as well as attorneys' fees and costs.  Pursuant to the statute, Plaintiffs and the Minnesota Subclass are also entitled to an injunction to halt Defendants' unlawful practices described herein.

## COUNT TWENTY-NINE

### Violations Of The Mississippi Consumer Protection Act
### Miss. Code Ann. § 75-24-1, Et Seq.

*(On Behalf of the Mississippi Subclass)*

260.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

261.    This claim is brought by Plaintiffs on behalf of residents of Mississippi who are members of the Mississippi Subclass.

262.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"; "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(i) Advertising goods or services with intent not to sell them as advertised."." MISS. CODE ANN. § 75-24-5(2).

263.    Plaintiffs seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT THIRTY

### Violations Of The Missouri Merchandising Practices Act
### Mo. Rev. Stat. § 407.010, Et Seq.

#### (On Behalf of the Missouri Subclass)

264.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

265.    This claim is brought by Plaintiffs on behalf of residents of Missouri who are members of the Missouri Subclass.

266.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

267.    Defendant, Plaintiffs, and class members are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

268.    Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

269.    Defendant is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief under MO. REV. STAT. § 407.025.

**COUNT THIRTY-ONE**

**Violations Of The Montana Unfair Trade Practices And Consumer Protection Act Of 1973 Mont. Code Ann. § 30-14-101, Et Seq.**

***(On Behalf of the Montana Subclass)***

270.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

271.    This claim is brought by Plaintiffs on behalf of residents of Montana who are members of the Montana Subclass.

272.    The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.

273.    Defendant, Plaintiffs, and class members are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

274.    Plaintiffs and class members are "consumer[s]" under MONT. CODE ANN. § 30-14-102(1).

275.    The sale of each iPhone 16 Product at issue occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and Defendant committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

276.   Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs to suffer an ascertainable loss of money and property, Plaintiffs seek from Defendant: the greater of actual damages or $500; discretionary treble damages; and reasonable attorneys' fees.

277.   Plaintiffs additionally seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## COUNT THIRTY-TWO

### Violations Of The Nebraska Consumer Protection Act
### Neb. Rev. Stat. § 59-1601, Et Seq.

### *(On Behalf of the Nebraska Subclass)*

278.   Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

279.   This claim is brought by Plaintiffs on behalf of residents of Nebraska who are members of the Nebraska Subclass.

280.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. § 59-1602.

281.   Defendant, Plaintiffs, and class members are "person[s]" under NEB. REV. STAT. § 59-1601(1).

282.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under NEB. REV. STAT. § 59-1601(2).

283.   Because Defendant's conduct caused injury to Plaintiffs' property through violations of the Nebraska CPA, Plaintiffs seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendant's unfair or deceptive acts and practices, costs of Court, reasonable attorneys' fees, and any other just and proper relief available under NEB. REV. STAT. § 59-1609.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT THIRTY-THREE

### Violations Of The Nevada Deceptive Trade Practices Act
### Nev. Rev. Stat. § 598.0903, Et Seq.

### *(On Behalf of the Nevada Subclass)*

284.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

285.    This claim is brought by Plaintiffs on behalf of residents of Nevada who are members of the Nevada Subclass.

286.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices. NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "[a]dvertises goods or services with intent not to sell or lease them as advertised;" "[k]nowingly makes any other false representation in a transaction;" "[f]ails to disclose a material fact in connection with the sale or lease of goods or services;" or "[m]akes an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion." NEV. REV. STAT. §§ 598.0915– 598.0925.

287.    Accordingly, Plaintiffs seek their actual damages, punitive damages, an order enjoining Defendant's deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. NEV. REV. STAT. § 41.600.

## COUNT THIRTY-FOUR

### Violations Of The New Hampshire Consumer Protection Act
### N.H. Rev. Stat. Ann. § 358-A:1, Et Seq.

#### *(On Behalf of the New Hampshire Subclass)*

288.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

289.    This claim is brought by Plaintiffs on behalf of residents of New Hampshire who are members of the New Hampshire Subclass.

290.    The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including, "but . . . not limited to" "[r]epresenting that goods or services have . . . characteristics, . . .uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade, . . . if they are of another"; and "[a]dvertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. ANN.§ 358-A:2.

291.    Defendant, Plaintiffs, and class members are "persons" under N.H. REV. STAT. ANN. § 358-A:1.

292.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. REV. STAT. ANN. § 358-A:1.

293.    Because Defendant's willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining Defendant's unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. REV. STAT. ANN. § 358-A:10.

## COUNT THIRTY-FIVE

### Violations Of The New Jersey Consumer Fraud Act
### N.J. Stat. Ann. § 56:8-1, Et Seq.

#### *(On Behalf of the New Jersey Subclass)*

294.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

295.    This claim is brought by Plaintiffs on behalf of residents of New Jersey who are members of the New Jersey Subclass.

296.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. STAT. ANN. § 56:8-2.

297.    Defendant, Plaintiffs, and class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

298.    Defendant engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

299.    Plaintiffs are entitled to recover legal and/or equitable relief, including an order enjoining Defendant's unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

## COUNT THIRTY-SIX

### Violations Of The New Mexico Unfair Trade Practices Act
### N.M. Stat. Ann. §§ 57-12-1, Et Seq.

#### *(On Behalf of the New Mexico Subclass)*

300.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

301.    This claim is brought by Plaintiffs on behalf of residents of New Mexico who are members of the New Mexico Subclass.

302.    The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;" or "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. § 57-12-2(D).

303.    Defendant, Plaintiffs, and class members are "person[s]" under N.M. STAT. ANN. § 57-12-2.

304.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. § 57-12-2.

Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. STAT. ANN. § 57-12-10.

## COUNT THIRTY-SEVEN

### Violations Of New York General Business Law
### N.Y. Gen. Bus. Law §§ 349, Et Seq.

#### *(On Behalf of the New York Subclass)*

305.    The New York Plaintiff identified above ("Plaintiff," for purposes of Counts Thirty-Seven and Thirty-Eight), individually and on behalf of the New York Subclass, realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

306.    Apple engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

307.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

308.    As a direct and proximate result of Apple's deceptive and unlawful acts and practices, Plaintiff and New York Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

309.    Apple acted intentionally, knowingly, and maliciously to violate New York's General Business Law, and recklessly disregarded Plaintiff and New York Subclass members' rights.  Apple knew that Apple Intelligence functionalities were not, and would not be, available on iPhone 16 Devices.

310.    Apple's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the New York Subclass members.

311.    The above deceptive and unlawful practices and acts by Apple caused substantial injury to Plaintiff and New York Subclass members that they could not reasonably avoid.

312.    Plaintiff and New York Subclass members were harmed and suffered damages as a result of Apple's actions. Plaintiff seeks all damages available as a result of Apple's violation of New York General Business Law § 349.

## COUNT THIRTY-EIGHT

**Violations Of New York General Business Law**

**N.Y. Gen. Bus. Law §§ 350, et seq.**

***(On Behalf of the New York Subclass)***

313.   Plaintiff realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

314.   Additionally, Apple's advertisements were false and misleading in a material way, as described herein, via affirmative statements and omissions whereby Apple failed to reveal facts material in light of such representations or conduct.

315.   Plaintiff and New York Subclass members were harmed and suffered damages as a result of Apple's actions.  Plaintiff seeks all damages available as a result of Apple's violation of New York General Business Law § 350.

**COUNT THIRTY-NINE**

**Violations Of The North Carolina Unfair And Deceptive Acts And Practices Act
N.C. Gen. Stat. § 75-1.1, Et Seq.**

***(On Behalf of the North Carolina Subclass)***

316.   Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

317.   This claim is brought by Plaintiffs on behalf of residents of North Carolina who are members of the North Carolina Subclass.

318.   North Carolina's Unfair and Deceptive Acts and Practices Act (the "North Carolina Act") broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a).

319.   Defendant engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75-1.1(b).

320.   Plaintiffs seek an order for treble their actual damages, an order enjoining Defendant's unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

## COUNT FORTY

### Violations Of The North Dakota Consumer Fraud Act
### N.D. Cent. Code § 51-15-02, Et Seq.

#### *(On Behalf of the North Dakota Subclass)*

321.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

322.    This claim is brought by Plaintiffs on behalf of residents of North Dakota who are members of the North Dakota Subclass.

323.    The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. Cent. Code § 51-15-02.

324.    Defendant, Plaintiffs, and class members are "persons" within the meaning of N.D. CENT. CODE § 51-15-02(4).

325.    Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE § 51-15-02(3), (5).

326.    Defendant knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, Defendant is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT FORTY-ONE

### Violations Of The Ohio Consumer Sales Practices Act
### Ohio Rev. Code Ann. § 1345.01, Et Seq.

#### *(On Behalf of the Ohio Subclass)*

327.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

328.     This claim is brought by Plaintiffs on behalf of residents of Ohio who are members of the Ohio Subclass.

329.     Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV. CODE ANN. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing that "the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have." OHIO REV. CODE ANN. § 1345.02.

330.     Defendant is a "supplier" as that term is defined in OHIO REV. CODE ANN. § 1345.01(C).

331.     Plaintiffs and class members are "consumers" as that term is defined in OHIO REV. CODE ANN. § 1345.01(D), and their purchases of iPhone 16 Products is a "consumer transaction" within the meaning of OHIO REV. CODE ANN. § 1345.01(A).

332.     As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendant's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to OHIO REV. CODE ANN. § 1345.09, et seq.

## COUNT FORTY-TWO

### Violations Of The Oklahoma Consumer Protection Act
### Okla. Stat. Tit. 15, § 751, Et Seq.

#### *(On Behalf of the Oklahoma Subclass)*

333.     Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

334.     This claim is brought by Plaintiffs on behalf of residents of Oklahoma who are members of the Oklahoma Subclass.

335.     The Oklahoma Consumer Protection Act ("Oklahoma CPA") declares unlawful, inter alia, the following acts or practices when committed in the course of business: making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person;" and "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." OKLA. STAT. tit. 15, §§ 752-753.

336.     Plaintiffs and class members are "persons" under OKLA. STAT. tit. 15, § 752.

337.     Defendant is a "person," "corporation," or "association" within the meaning of OKLA. STAT. tit. 15, § 15-751(1).

338.     The sale of iPhone 16 Products to Plaintiffs was a "consumer transaction" within the meaning of OKLA. STAT. tit. 15, § 752, and Defendant's actions as set forth herein occurred in the conduct of trade or commerce.

339.     Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under OKLA. STAT. tit. 15, § 761.1.  Plaintiffs further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT FORTY-THREE

### Violations Of The Oregon Unlawful Trade Practices Act
### Or. Rev. Stat. § 646.605, Et Seq.

#### (On Behalf of the Oregon Subclass)

340.     Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

341.     This claim is brought by Plaintiffs on behalf of residents of Oregon who are members of the Oregon Subclass.

342.     The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "[r]epresent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses,

benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have.;" "[a]dvertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised;" or "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. § 646.608(1).

343.    Defendant is a person within the meaning of OR. REV. STAT. § 646.605(4).

344.    Each iPhone 16 Product at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

345.    Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).

## COUNT FORTY-FOUR

**Violations Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law 73 Pa. Cons. Stat. § 201-1, Et Seq.**

***(On Behalf of the Pennsylvania Subclass)***

346.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

347.    This claim is brought by Plaintiffs on behalf of residents of Pennsylvania who are members of the Pennsylvania Subclass.

348.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  representing that goods or services have characteristics, benefits or qualities that they do not have; representing that goods or services are of a particular standard, quality or grade if they are of another; advertising goods or services with intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 PA. CONS. STAT. § 201-2(4).

349.    Defendant, Plaintiffs, and class members are "persons" within the meaning of 73 PA. CONS. STAT. § 201-2(2).

350.     Plaintiffs purchased iPhone 16 Products primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. § 201-9.2.

351.     All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. § 201-2(3).

352.     Defendant is liable to Plaintiffs for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 PA. CONS. STAT. § 201-9.2(a).  Plaintiffs are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT FORTY-FIVE

**Violations Of The Rhode Island Unfair Trade Practices And Consumer Protection Act R.I. Gen. Laws § 6-13.1, Et Seq.**

### *(On Behalf of the Rhode Island Subclass)*

353.     Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

354.     This claim is brought by Plaintiffs on behalf of residents of Rhode Island who are members of the Rhode Island Subclass.

355.     Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding;" "[e]ngaging in any act or practice that is unfair or deceptive to the consumer;" and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. GEN. LAWS § 6-13.1-1(6).

356.     Defendant, Plaintiffs, and class members are "persons" within the meaning of R.I. GEN. LAWS § 6-13.1-1(3).

357.     Defendant is engaged in "trade" and "commerce" within the meaning of R.I. GEN. LAWS § 6-13.1-1(5).

358.    Plaintiffs purchased iPhone 16 Products primarily for personal, family, or household purposes within the meaning of R.I. GEN. LAWS § 6-13.1-5.2(a).

359.    Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. GEN. LAWS § 6-13.1-5.2(a). Plaintiffs also seek punitive damages at the discretion of the Court.

## COUNT FORTY-SIX

### Violations Of The South Carolina Unfair Trade Practices Act
### S.C. Code Ann. § 39-5-10, Et Seq.

### *(On Behalf of the South Carolina Subclass)*

360.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

361.    This claim is brought by Plaintiffs on behalf of residents of South Carolina who are members of the South Carolina Subclass.

362.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. CODE ANN. § 39-5-20(a).

363.    Defendant is a "person" under S.C. CODE ANN. § 39-5-10.

364.    Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses. Because Defendant's actions were willful and knowing, Plaintiffs' damages should be trebled.

365.    Plaintiffs further seek an order enjoining Defendant's unfair or deceptive acts or practices.

## COUNT FORTY-SEVEN

### Violations Of The South Dakota Deceptive Trade Practices And Consumer Protection Law
### S.D. Codified Laws § 37-24-6, Et Seq.

### *(On Behalf of the South Dakota Subclass)*

366.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

367.    This claim is brought by Plaintiffs on behalf of residents of South Dakota who are members of the South Dakota Subclass.

368.    The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS §§ 37-24-6(1), 37-24-31.

369.    Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs are entitled to a recovery of their actual damages suffered as a result of Defendant's acts and practices.

## COUNT FORTY-EIGHT

### Violations Of The Tennessee Consumer Protection Act
### Tenn. Code Ann. § 47-18-101, Et Seq.

### *(On Behalf of the Tennessee Subclass)*

370.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

371.    This claim is brought by Plaintiffs on behalf of residents of Tennessee who are members of the Tennessee Subclass.

372.    Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including, but not limited to, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;" and "[a]dvertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104.

373.    Plaintiffs and class members are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

374.    Defendant is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

375.    Defendant's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19). Pursuant to TENN. CODE ANN. § 47-18-109(a), Plaintiffs seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

<u>**COUNT FORTY-NINE**</u>

**Violation Of Texas Business And Commerce Code Deceptive Trade Practices-Consumer Protection Act**
**Tex. Bus. & Com. Code Ann. §§ 17.41, Et Seq.**

***(On Behalf of the Texas Subclass)***

376.    The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

377.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and "unconscionable action[s] or course of action[s]," which means "act[s] or practice[s] which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

378.    Apple is a "person" as defined by Tex. Bus. & Com. Code Ann. § 17.45(3).

379.    Plaintiff and Texas Subclass members are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities

with less than $25 million in assets), and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).

380.    Apple was and is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Texas Bus. & Com. Code § 17.46(a) with respect to the conduct alleged herein.

381.    Apple engaged in false, misleading, or deceptive acts or practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

382.    Defendants knew or should have known that their conduct was in violation of the Texas DTPA.  Apple intended to mislead Plaintiff and Texas Subclass members and induce them to rely on its misrepresentations and omissions.

383.    Defendants owed and continue to owe Plaintiffs and Texas Subclass members a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the iPhone 16 Products.

384.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

385.    Had Apple disclosed to Plaintiff and Texas Subclass members that it misrepresented the Apple Intelligence capabilities for the iPhone 16 Devices, omitted material information regarding the performance degradation of the iPhone 16 Devices caused by Apple Intelligence iOS software updates, and was otherwise engaged in deceptive, common business practices, Apple would have been unable to continue that business and would have been forced to disclose its false advertising campaign.  Instead, Apple represented that the Apple Intelligence capabilities were functioning and would be available for use in the iPhone 16 Devices. Plaintiff and the Texas Subclass members acted reasonably in relying on Apple's misrepresentations and omissions, the truth of which they could not have discovered.

386.    The above-described deceptive acts and practices specifically violated the following provisions of Tex. Bus. & Com. Code Ann. § 17.46(b)(7), (9), and (24):

a. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

b. Advertising goods or services with intent not to sell them as advertised; and

c. Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

387.    Apple acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights. Apple's knowledge of the Apple Intelligence capabilities misrepresentation and the iPhone 16 Devices' performance issues caused by Apple Intelligence iOS software updates put it on notice that the Apple Intelligence capabilities, devices and iOS updates were not as Apple advertised.

388.    As a direct and proximate result of Apple's deceptive acts or practices, Plaintiff and Texas Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

389.    Apple's violations present a continuing risk to Plaintiff and Texas Subclass members as well as to the general public.

390.    This count is included here as a placeholder for notice purposes only. Prior to the filing of this Complaint, Plaintiffs sent a letter complying with TEX. BUS. & COM. CODE § 17.505(a) to Defendants. Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of Texas purchasers who are members of the Class.

391.    Plaintiff and Texas Subclass members were harmed and suffered damages as a result of Apple's actions. Plaintiff will seek all damages available as a result of Apple's violation of the Texas Deceptive Trade Practices-Consumer Protection Act.

**COUNT FIFTY**

**Violations Of The Utah Consumer Sale Practices Act**
**Utah Code Ann. § 13-11-1, Et Seq.**

***(On Behalf of the Utah Subclass)***

392.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

393.    This claim is brought by Plaintiffs on behalf of residents of Utah who are members of the Utah Subclass.

394.    The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including, but not limited to, indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not; and indicating that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5.

395.    Defendant knew, or had reason to know, that consumers would rely on Defendant's representations and omissions regarding the capabilities of the iPhone 16 Products, and that, given the non-existence of those capabilities, consumers would be harmed. Defendant therefore engaged in an unconscionable act within the meaning of UTAH CODE ANN. § 13-11-5.

396.    Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

**COUNT FIFTY-ONE**

**Violations Of The Vermont Consumer Fraud Act
Vt. Stat. Ann. Tit. 9, § 2451, Et Seq.**

***(On Behalf of the Vermont Subclass)***

397.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

398.    This claim is brought by Plaintiffs on behalf of residents of Vermont who are members of the Vermont Subclass.

399.    The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce...." VT. STAT. ANN. tit. 9, § 2453(a).

400.    Defendant is a seller within the meaning of VT. STAT. ANN. tit. 9, § 2451(a)(c).

401.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to VT. STAT. ANN. tit. 9, § 2461(b).

**COUNT FIFTY-TWO**

**Violations Of The Virginia Consumer Protection Act
Va. Code Ann. § 59.1-196, Et Seq.**

***(On Behalf of the Virginia Subclass)***

402.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

403.    This claim is brought by Plaintiffs on behalf of residents of Virginia who are members of the Virginia Subclass.

404.    The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include:  "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" "[a]dvertising goods or services with intent not to

sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200.

405.    Defendant is a "supplier" under VA. CODE ANN. § 59.1-198.

406.    Defendant's advertisement and sale of the iPhone 16 Products was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

407.    Pursuant to VA. CODE ANN. § 59.1-204, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because Defendant's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

408.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under VA. CODE ANN. § 59.1-204, *et seq*.

## COUNT FIFTY-THREE

### Violations Of The Washington Consumer Protection Act
### Wash. Rev. Code Ann. §§ 19.86.010, Et Seq.

#### *(On Behalf of the Washington Subclass)*

409.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

410.    This claim is brought by Plaintiffs on behalf of residents of Washington who are members of the Washington Subclass.

411.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE. ANN. § 19.96.010.

412.    Defendant committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. ANN. § 19.96.010.

413.    Defendant is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under WASH. REV. CODE. ANN. § 19.86.090.

## COUNT FIFTY-FOUR

**Violations Of The West Virginia Consumer Credit And Protection Act**
**W. Va. Code § 46A-1-101, Et Seq.**

*(On Behalf of the West Virginia Subclass)*

414.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

415.    This claim is brought by Plaintiffs on behalf of residents of West Virginia who are members of the West Virginia Subclass.

416.    Each Defendant is a "person" under W. VA. CODE § 46A-1-102(31).

417.    Plaintiffs and West Virginia Class members are "consumers" as defined by W. VA. CODE §§ 46A-1-102(12) and 46A-6-102(2), who purchased an iPhone 16 Product.

418.    Defendants engaged in trade or commerce as defined by W. VA. CODE § 46A-6-102(6).

419.    The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." W. VA. CODE § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include: advertising goods or services with intent not to sell them as advertised; engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; the act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast

in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive. W. VA. CODE § 46A-6-102(7).

420.    Pursuant to W. VA. CODE § 46A-6-106, once the statutory notice period has expired, Plaintiffs will amend to seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each Plaintiff.

421.    Plaintiffs further seek an order enjoining the Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. VA. CODE § 46A-5-101 et seq., and any other just and proper relief available under the West Virginia CCPA.

422.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with W. VA. CODE § 46A-6-106(b) to Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their Complaint to bring this count on behalf of West Virginia purchasers who are members of the Class.

## COUNT FIFTY-FIVE

### Violations Of The Wisconsin Deceptive Trade Practices Act

### Wis. Stat. § 110.18, Et Seq.

### *(On Behalf of the Wisconsin Subclass)*

423.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

424.    This claim is brought by Plaintiffs on behalf of residents of Wisconsin who are members of the Wisconsin Subclass.

425.    The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).

426.    Defendant is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

427.    Plaintiffs and class members are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiffs purchased iPhone 16 Products.

428.    Plaintiffs are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because Defendant's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

429.    Plaintiffs also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

## COUNT FIFTY-SIX

### Violations Of The Wyoming Consumer Protection Act

### Wyo. Stat. § 40-12-105, Et Seq.

### *(On Behalf of the Wyoming Subclass)*

430.    Plaintiffs hereby incorporate by reference each of the above paragraphs as if fully set forth herein.

431.    This claim is brought by Plaintiffs on behalf of residents of Wyoming who are members of the Wyoming Subclass.

432.    Pursuant to WYO. STAT. § 40-12-108(a), once the statutory notice period has expired, Plaintiffs will amend to seek monetary relief against the Defendants measured as actual damages in an amount to be determined at trial, in addition to any other just and proper relief available under the Wyoming CPA.

433.    This count is included here as a placeholder for notice purposes only.  Prior to the filing of this Complaint, Plaintiffs sent a letter complying with WYO. STAT. § 45-12-109 to

1  Defendants.  Once the statutory notice period has expired, Plaintiffs intend to amend their

2  Complaint to bring this count on behalf of Wyoming purchasers who are members of the Class.

3      434.  Pursuant to applicable state statutes, Plaintiffs will mail a copy of this action to

4  the Attorney General's office for the states of Connecticut, Illinois, Louisiana, Missouri, New

5  Jersey, Oregon, Texas, Utah, and Washington.

6  

**COUNT FIFTY-SEVEN**

7  

**Common Law Fraud and Deceit**

8  

***(On Behalf of the Nationwide Class)***

9      435.  Plaintiffs reallege and incorporate by reference each of the above paragraphs as if

10  fully set forth herein.

11      436.  Apple affirmatively misrepresented and made false and materially misleading

12  statements regarding the capabilities of the iPhone 16 Devices when selling and marketing them.

13      437.  Apple knew that its misrepresentations were false and misleading at the time they

14  were made, and that its misrepresentations regarding the Apple Intelligence capabilities on the

15  iPhone 16 Devices were material, and that a reasonable consumer would rely upon Apple's

16  misrepresentations in making purchasing decisions regarding the iPhone 16 Devices.

17      438.  Plaintiffs and class members did not, and could not, have known about the falsity

18  of Apple's statements.  Plaintiffs and class members had a right to rely upon Apples

19  representations (as apple maintained unilateral control over knowledge of the Devices true

20  quality), did rely upon their misrepresentations accordingly, and their reliance was reasonable

21  and justified.

22      439.  Plaintiffs and class members relied upon Apple's numerous statements and

23  advertisements claiming they would have access to Apple Intelligence capabilities, including the

24  personalized AI Siri functionalities.  Apple concealed the true nature of these functionalities—

25  that they were incomplete and not on schedule when they were announced and remain as such to

26  this day.

27

28

CLASS ACTION COMPLAINT

440.    Had Apple revealed the true nature of these issues, Plaintiffs and class members would not have purchased the iPhone 16 Devices or would not have purchased at such a high premium, because the Devices did not function as advertised.

441.    Plaintiffs and class members were harmed and sustained damages as a direct result of Apple's deception.  By purchasing the iPhone 16 Products, Plaintiffs and class members sustained actual losses and damages caused by Apple's false representations regarding Apple Intelligence and the iPhone 16 Products.  Plaintiffs seek all damages available as a result of Apple's fraudulent conduct, including punitive damages.

## COUNT FIFTY-EIGHT

### Common Law Negligent Misrepresentation

### *(On Behalf of the Nationwide Class)*

442.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

443.    Apple had a duty to Plaintiffs and the class to exercise reasonable and ordinary care in the developing, marketing, and sale of Apple Intelligence and the iPhone 16 Devices.

444.    Apple breached its duty to Plaintiffs and the class by falsely advertising and promoting Apple Intelligence and the capabilities that would be accessible on the iPhone 16 Devices, when such capabilities were not, and would not be, available.

445.    Apple knew or should have known that the qualities and characteristics of the products were not as advertised, warranted and represented by Apple.

446.    As a result of Apple's wrongful conduct, Plaintiffs and the class members have suffered economic injury and other harm, as they would not have purchased the iPhone 16 Devices had they known of the truth of Apple's deceptions.  Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## COUNT FIFTY-NINE

### Common Law Breach of Contract

### *(On Behalf of the Nationwide Class)*

CLASS ACTION COMPLAINT

447.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

448.    Apple expressly warranted that the iPhone 16 Devices would perform as advertised.  Apple's claims regarding the iPhone 16 Devices constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.  Plaintiffs and the Class Members relied upon and placed importance on Apple's claims.

449.    All conditions precedent to Apple's liability under this contract have been performed by Plaintiffs and class members, and Apple breached the terms of the contract, including express warranties, by not providing iPhone 16 Devices that conform to the advertising and marketing claims made by Apple.

450.    Plaintiffs and other class members have suffered damages as a result of Apple's breach of contract in an amount to be determined at trial.

<u>**COUNT SIXTY**</u>

**Common Law Breach of Implied Warranty of Merchantability**

***(On Behalf of the Nationwide Class)***

451.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

452.    Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind. Defendant is a merchant with respect to the iPhone 16 Devices at issue.

453.    To be merchantable, goods must conform to the promises or affirmations of fact made in the product's advertising.

454.    Defendant breached the implied warranty of merchantability to Plaintiffs and class members in its representations that the iPhone 16 Devices contained the Apple Intelligence and Siri capabilities that were advertised, when those representations were actually false.

455.    As a result of Apple's misleading conduct, Plaintiffs and class members did not receive merchantable goods as impliedly warranted by Apple.

456.    Apple did not exclude or modify the implied warranty of merchantability.

457.    Plaintiffs and class members incurred damages, in an amount to be determined at trial, as a proximate result of Apple's breach of implied warranty.  Plaintiffs and class members were damaged as they paid for a Product at a premium price that did not have the promised quality and nature, when they could have instead purchased a less expensive smartphone or other product, and they lost the opportunity to purchase other similar products that provided the advertised capabilities.

## COUNT SIXTY-ONE

### Common Law Quasi-Contract/Unjust Enrichment

### *(On Behalf of the Nationwide Class)*

458.    Plaintiffs reallege and incorporate by reference each of the above paragraphs as if fully set forth herein.

459.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

460.    Plaintiffs and class members paid Apple the value of the promised product, an iPhone 16 Device which was fully functional with Apple Intelligence technology at the time of release or within a reasonably short period of time thereafter.

461.    In exchange for this payment, Apple provided Plaintiffs and class members with iPhone 16 Devices and Apple Intelligence functionality that did not meet Plaintiffs' and class members' reasonable expectations created by Apple's representations, marketing, and labelling.

462.    Apple knew or should have known that the iPhone 16 Devices and Apple Intelligence functionalities could not meet the reasonable expectations of Plaintiffs and class members created by its representations, marketing, and labelling.

463.    Accordingly, Plaintiffs and class members conferred value to Apple which would be unjust for Apple to retain.

464.    Plaintiffs and class members have suffered and continue to suffer economic and other damages as a direct and proximate result of Apple's unjust enrichment.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other Class Members, respectfully request that the Court enter an Order:

A.    Declaring that this action is a proper class action, certifying the Class and/or Subclasses as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B.    Granting an injunction requiring Apple to remove any remaining statements about the availability of Apple Intelligence and AI-based Siri features prior to the introduction of those features, to engage in a national advertising campaign to correct its prior misrepresentations detailed in this complaint, and to discontinue sales of iPhone 16 Devices or similar devices until Apple takes such actions;

C.    Ordering Apple to pay actual and statutory damages (including treble and/or punitive damages), restitution and disgorgement of wrongful gains to Plaintiffs and the other class members, as allowable by law;

D.    Ordering Apple to pay both pre- and post-judgment interest on any amounts awarded;

E.    Ordering Apple to pay attorneys' fees and costs of suit, including as provided for under the causes of action described above and under California Code of Civil Procedure § 1021.5;

F.    Ordering any other appropriate equitable relief; and

G.    Ordering such other and further relief as may be just and proper.

## VIII.    DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  May 14, 2025

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman (*pro hac vice forthcoming*)
Austin P. Van (*pro hac vice forthcoming*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: avan@pomlaw.com

*Counsel for Plaintiffs*